St. Clair G. STRONG, M.D.

v.

Lewis R. SLATON et al.

Civ. A. No. C80–2130A.

United States District Court,
N. D. Georgia,
Atlanta Division.

March 17, 1981.

Meals & McLaughlin, Atlanta, Ga., for plaintiff.

H. Allen Moye, Asst. Dist. Atty., Arthur K. Bolton, Atty. Gen., Atlanta, Ga., for defendants.

## ORDER

TIDWELL, District Judge.

The above-styled matter is presently before the court on the defendant Lewis R. Slaton's motion to dismiss and motion for a protective order. The relevant facts of the case are as follows. As a result of an investigation by the Georgia Bureau of Investigation (GBI), the plaintiff Dr. Strong was arrested for allegedly distributing drugs in violation of the Georgia Controlled Substances Act. Nine days later on December 20, the defendant Slaton sought and obtained a fourteen (14) count indictment against Dr. Strong for the same alleged violations. Following the indictment, Slaton made a public statement that a number of doctors, including Dr. Strong, had been arrested and indicted for the violation of the Georgia Controlled Substances Act. Slaton went on to describe the practice of issuing illegal prescriptions as "quite common" among doctors and stated that a substantial amount of drugs were being "diverted from legal channels into illegal ones."

Dr. Strong initiated this action, in part, under 42 U.S.C. § 1983, alleging that Slaton willfully participated in a scheme to publicize and thereby make an example of Dr. Strong to the medical profession in an effort to discourage improper prescription in the future. Dr. Strong contends that he has suffered substantial injury to his personal and professional reputation and has lost his professional practice as a result of Slaton's intentional generation of adverse publicity. In his complaint, the plaintiff requested actual and compensatory damages for his losses. The defendant Slaton now files this motion to dismiss asserting that as the prosecuting attorney he is cloaked with absolute immunity from civil suit for damages under 42 U.S.C. § 1983. The defendant has also filed a motion for protective order under Rule 26, Federal Rules of Civil Procedure. Because the court finds in favor of the defendant's motion to dismiss, it is unnecessary for the court to address the merits of the motion for a protective order.

The defendant's claim of absolute immunity is founded upon the Supreme Court decision in *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). In *Imbler*, the Supreme Court held that a state prosecutor is absolutely immune from damages liability under § 1983 for alleged civil rights violations committed in the course of "initiating a prosecution and presenting the State's case." *Id.* at 431, 96 S.Ct. at 995. The Court, however, expressly left open the question of whether the policies that mandate absolute immunity extend to "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of an advocate." *Id.* at 430–31, 96 S.Ct. at 995. In a given set of circumstances, therefore, the level of immunity due a prosecutor, whether absolute or qualified, depends on "the functional nature of the activities rather than [the prosecutor's] status." *Id.* at 430, 96 S.Ct. at 995. Accordingly, the court must determine whether the defendant's activities in releasing information to the press are more properly characterized as "investigative or administrative" rather than "quasi-judicial."

In *Marrero v. City of Hialead*, 625 F.2d 499 (5 Cir. 1980), the Fifth Circuit considered the proper characterization of a prosecutor's activities in releasing information to the media. In *Marrero*, the Assistant State Attorney for Dade County, Florida in concert with several police officers conducted a search of a jewelry store for stolen items pursuant to a warrant. After a somewhat futile search of the premises which ultimately produced one item listed on the warrant, the prosecutor and the police officers seized the entire stock of jewelry and arrested Juan and Maria Marrero for receipt of stolen property. The events of the search and arrest were covered by representatives of all channels of the local media, who had arrived at the store simultaneously with the police officers and the assistant attorney. At the time of the arrests, the police department and the assistant district attorney announced to the media that over seventy-five thousand dollars in stolen property had been recovered in the raid and that Juan and Maria had been arrested for receipt of stolen goods. Subsequently, the Marreros brought a suit in federal district court under 42 U.S.C. § 1983, seeking, in part, damages for the issuance of statements to the media by the assistant state attorney. The complaint alleged that the prosecutor slandered the personal and business reputation of Juan and Maria Marrero, thereby destroying their reputation and depriving them of their rights to earn a living.

In determining the proper characterization of the assistant attorney's activities, the court emphasized that the defamatory statements made to the media occurred outside the confines of the courtroom and were unrelated to any judicial proceeding, thereby rendering inapplicable the well-established doctrine of absolute immunity for defamatory remarks made during a judicial proceeding. Furthermore, the court noted that the attorney's statements were neither connected "with the initiation of a prosecution or with the activities undertaken in following up a prosecution." *Id.* at 506. Absent the intimate associate with the judicial phase of the criminal process recognized

in *Imbler*, the court determined that the attorney had acted in a capacity similar to "an investigating officer informing the press of activities occurring at the scene of the crime." *Id.* Accordingly, the court concluded that the assistant attorney, having committed the alleged act of defamation in the course of non-judicial activities, was entitled to only a qualified immunity under *Imbler*. *Id.* at 510.

In contrast to *Marrero*, the present case involves statements issued to the press in a post-indictment context. After the return of the indictment, the defendant Slaton made a statement detailing the allegations existing against the plaintiff and two other doctors who had also been arrested and indicted during roughly the same time period. In addition to a statement of the allegations, the defendant gave a description of the problem of illegal drug prescription in Georgia as perceived by the State. Although these statements were not made within the confines of a courtroom, they bore directly on the initiation of the prosecution of the plaintiff, providing accurate information regarding the nature of the charges and the substance of the problem sought to be eradicated by the State. The statements, therefore, were "intimately associated with the judicial phase of the criminal process," and entitled to the protection of absolute immunity provided to a prosecutor acting in a quasi-judicial capacity. This holding is supported by the strong public policy in favor of the free flow of information concerning the affairs of government and the apprehension of criminals. This policy concern was recognized by the Fifth Circuit in their decision to extend a qualified immunity to a prosecutor who releases information to the media at the scene of an arrest. In the circumstances of an initiated prosecution, however, the concern for protecting the free flow of information from the prosecutor takes on added significance since the prosecutor is the direct and primary source of information regarding the active prosecution of an individual. In this context, the safeguard of absolute immunity is vital to both the pres-

ervation of public awareness and the proper performance of a prosecutor's duties. Accordingly, the court grants the defendant Slaton's motion to dismiss the plaintiff's claim as it applies to him.