DAVIS v EDDIE

Docket No. 65073. Submitted June 15, 1983, at Lansing.—Decided November 7, 1983. Leave to appeal applied for.

Edward P. Davis filed suit against Kim Eddie, Chief Assistant Prosecuting Attorney for Ingham County, in Ingham Circuit Court alleging false imprisonment and false arrest. Mr. Davis had been arrested and charged with armed robbery after being accused of that crime by Gary Tomlin. Tomlin later claimed he found the money which he had thought had been stolen. This information was given to the investigating detective on or about January 10, 1981. The charges against Davis were dismissed by the circuit court at the preliminary examination on January 22, 1981. Davis's lawsuit alleged that Eddie had a duty to release him immediately upon learning that the complaining witness retracted his charges and therefore asserted that there was no robbery. Eddie filed a motion for accelerated judgment claiming immunity from all civil liability for all acts and decisions made in the course of his employment and in discharging the duties of his office as assistant prosecuting attorney. The court, James T. Kallman, J., denied the motion for accelerated judgment. Defendant appealed on leave granted. *Held:*

1. A prosecutor's acts which are within the scope of his functions and duties are quasi-judicial and the prosecutor has absolute immunity regarding the performance of those functions and duties.

2. Although the complaining witness, Tomlin, retracted his story about being robbed, Eddie had the right to show at a preliminary examination that an attempted robbery had been pursued or even that an assault with a dangerous weapon had taken place, thus entitling the district court to bind Davis over. Eddie's motion for accelerated judgment should have been granted.

Reversed and remanded for entry of accelerated judgment in favor of defendant.

Reference for Points in Headnote
63 Am Jur 2d, Prosecuting Attorneys § 34.

PROSECUTING ATTORNEYS — IMMUNITY.

> A prosecutor's acts which are within the scope of his functions and duties are quasi-judicial and the prosecutor has absolute immunity regarding the performance of those functions and duties.

*Abood, Abood & Rheaume, P.C.* (by *William E. Rheaume),* for plaintiff.

*Morgan & Fuzak, P.C.* (by *John F. Fuzak),* for defendant.

Before: M. J. KELLY, P.J., and SHEPHERD and R. I. COOPER,* JJ.

R. I. COOPER, J. The plaintiff sued the defendant for false imprisonment and false arrest. The defendant is the Chief Assistant Prosecutor for Ingham County. On or about January 7, 1981, Mr. Davis was arrested for the alleged armed robbery of one Gary Tomlin. It was Mr. Tomlin's original story that plaintiff and another man had visited Mr. Tomlin's apartment, sprayed Mr. Tomlin with Mace, and robbed him of money. Mr. Tomlin reacted by getting a knife and cutting one of the two men. Mr. Davis's bail was set at $2,500 when he was placed in jail on January 7, 1981. A preliminary examination was set for Mr. Davis for January 22, 1981. Approximately three days after the arrest, Mr. Tomlin informed the investigating detective that he had found the money involved and therefore felt that no robbery had been committed. The record is silent as to the date that the detective passed the information on to Mr. Eddie. However at preliminary examination on January 22, 1981, the charges against Mr. Davis were dropped

* Circuit judge, sitting on the Court of Appeals by assignment.

by the court when witness Tomlin testified that he had found the money.

Davis filed his lawsuit against Mr. Eddie on October 22, 1981, for false imprisonment and false arrest on the grounds that Eddie had a duty to release him immediately upon learning that the complaining witness retracted his charges and therefore asserted that there was no robbery. Further, Davis argues that Mr. Eddie had a duty to inform either Mr. Davis or his attorney that the complainant had retracted his statements against Mr. Davis. Davis asserts that, by continuing to preliminary examination and by failing to inform him of the retraction, defendant acted in a wilful and malicious or grossly negligent manner.

On January 12, 1982, Eddie filed a motion for accelerated judgment by which he claimed immunity from all civil liability for all acts and decisions made in the course of his employment and in discharging the duties of his office as assistant prosecuting attorney. Oral arguments were heard on March 10, 1982, and the trial court denied defendant's motion for accelerated judgment via a signed order dated March 25, 1982. Eddie now appeals that denial.

Where a prosecutor's actions are within the scope of his prosecutorial functions and duties, his acts are quasi-judicial in nature and he has absolute immunity regarding the performance of those functions and duties. See *People v Bemis,* 51 Mich 422; 16 NW 794 (1883), *Belt v Ritter,* 385 Mich 402; 189 NW2d 221 (1971), and *Bloss v Williams,* 15 Mich App 228, 232; 166 NW2d 520 (1968). Specifically, the *Bloss* Court stated:

"* * * The public interest requires that persons occupying such important positions and so closely identified with the judicial departments of the government should

speak and act freely and fearlessly in the discharge of their important official functions * * *." Citing *Yaselli v Goff,* 12 F2d 396, 406 (CA 2, 1926).

The duties and functions of a prosecutor are not strictly or narrowly construed. The *Bloss* Court also stated:

"The prosecutor's powers and duties include not only those expressly set forth in the statute but also such additional functions as may be necessarily implied from those specifically mentioned." *Bloss, supra,* p 233, citing 27 CJS, District and Prosecuting Attorneys, § 10.

Although the case of *Imbler v Pachtman,* 424 US 409; 96 S Ct 984; 47 L Ed 2d 128 (1976), involves a split decision as to the finding of absolute immunity as opposed to qualified immunity, the majority opinion, favoring absolute immunity, shows significant reasoning to the effect that a prosecutor should be protected from harassment due to unfounded litigation which would deflect from the prosecutor's energies in pursuing his official responsibilities. The majority in *Imbler* stated that if a prosecutor had to act under the potential threat of litigation his independence of judgment would be affected. For example, his judgment might be affected if he was put into a position where he would fear a civil suit for false arrest if he failed to obtain a conviction. Also, the *Imbler* Court stated that a defendant's rights could be jeopardized or weakened in general in that a prosecutor might be hesitant to allow a dismissal where such a dismissal might be used as a cause to sue the prosecutor for malicious prosecution. The *Imbler* Court recognized that there are times when prosecutors overstep their bounds, however that an aggrieved party does have the right to press for

criminal charges or to seek professional disciplinary sanctions against such a prosecutor.

The case of *Tyler v Witkowski,* 511 F2d 449 (CA 7, 1975), provides significant analogy to our present case. In the *Tyler* case the plaintiff in the civil case had been charged with robbery and murder. Two key witnesses retracted their identification of the plaintiff on May 7, 1971. However the prosecutor did not dismiss the charges. The plaintiff posted bond on May 18, 1971, and charges were dropped by the court on May 21, 1971, without prejudice. The prosecutor who was sued for not dismissing the case had been assigned to the case after the issuance of an arrest warrant and had been involved in the case for an eight-day period prior to the dismissal of the case. The *Witkowski* Court held:

"A prosecutor is entitled to a reasonable period to study charges made against an accused. The 8-day period here was patently permissible on this record. * * * 'The withdrawal of statements of [the witnesses] obviously diminished the state's case, but left a considerable amount of circumstantial evidence, including the statements of [six others].' " *Witkowski,* p 451.

Finally, the *Witkowski* Court observed that:

"* * * the decision whether insufficient evidence remains to support an existing charge after retractions are procured from admittedly key witnesses is one that cannot be made by a layman, but only by a prosecutor in the exercise of his quasi-judicial discretion." *Witkowski,* p 451, citing *Imbler v Pachtman,* 500 F2d 1301 (CA 9, 1974).

Although the *Witkowski* Court stated that there may have been duress on the retracting witnesses, the focus of the court's observation states that

there was a considerable amount of circumstantial evidence remaining despite the retraction. In our present case it is significant that the complainant originally stated that he was sprayed with Mace. Further he states that he grabbed a knife as a reaction to being sprayed and then robbed. The mere finding of money might show that a completed robbery was not achieved. However the prosecutor would have a right to show at a preliminary examination that an attempted robbery had been pursued or even that an assault with a dangerous weapon had taken place, thus entitling the district court to bind Davis over for trial. There has been no showing that the prosecutor suppressed, altered, or destroyed evidence. An assertion that the prosecutor violated his professional code of ethics is not sufficient to establish that the prosecutor acted outside the scope of his office.

Reversed and remanded for entry of accelerated judgment in favor of defendant.