## PAYTON v WAYNE COUNTY

Docket No. 69492. Submitted April 5, 1984, at Detroit.—Decided July 11, 1984.

David J. Payton was arrested by the Highland Park Police without a warrant. He was held for more than 30 hours by Highland Park Police officers without being charged with a crime and was questioned by officers from the Detroit Police Department. He was transferred to the custody of the Detroit Police Department, which held him for an additional 56 hours, questioning him about certain murders. At the conclusion of the questioning, Payton was charged with the murders of four prostitutes. Thereafter, another person confessed to having committed three of the murders with which Payton had been charged. Additional evidence also linked the other person with the crimes. Despite the evidence exculpating Payton, the Wayne County Prosecuting Attorney's office refused to drop the charges against Payton or to release him from custody. Thereafter, various statements were made by members of the prosecuting attorney's office to the effect that Payton was still considered to be guilty of the crimes and would be prosecuted for them. Payton's incriminating statements and admissions were subsequently suppressed by Detroit Recorder's Court, Warfield Moore, J., on the ground that Payton had been held too long without being charged and brought before a magistrate. Soon thereafter, all charges against Payton were dismissed by the court. Following the dismissal of the charges, the Wayne County Prosecuting Attorney allegedly stated at a press conference that, if there were any justice in the criminal justice system, Payton would stand trial. The statement was published in Detroit newspapers. Payton filed suit against Wayne County,

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4] 15 Am Jur 2d, Civil Rights § 269.

[1-6] 63A Am Jur 2d, Prosecuting Attorneys § 4.

When is prosecutor entitled to absolute immunity from civil suit for damages under 42 USCS § 1983: post-Imbler cases. 67 ALR Fed 640.

[2, 3, 6] 57 Am Jur 2d, Municipal, School, and State Tort Liability, §§ 45-47.

the City of Detroit, the Detroit Police Department, the City of Highland Park, the Highland Park Police Department, the Wayne County Prosecuting Attorney, the Chief Assistant Prosecuting Attorney, and others in Wayne Circuit Court alleging, *inter alia,* that the statements made to the news media by the prosecuting attorney and his chief assistant prosecuting attorney constituted slander per se because each maliciously and falsely accused plaintiff of serious crimes, thereby violating his federal civil rights as well as his rights under the state law of defamation. Defendants Cahalan, the prosecuting attorney, and Carnovale, the chief assistant prosecuting attorney, and the assistant prosecuting attorney moved for summary judgment on the grounds that they were absolutely immune from civil liability for their actions. The court, Richard D. Dunn, J., denied the motion. Defendants appeal. *Held:*

The trial court erred in not granting defendants' motion for summary judgment. The statements in question were uttered while the defendants were performing prosecutorial functions and duties, therefore their acts were quasi-judicial in nature and the defendants were absolutely immune from liability.

Reversed.

T. M. BURNS, J., *concurred in the result reached by the majority but would not hold that the prosecutor is cloaked with absolute immunity while making statements to the press. Rather, he would hold that the prosecutor merely has a qualified privilege to make the statements in question and would find, contrary to the trial court's finding, that there was no issue of fact based upon plaintiff's allegation that the statements were made with actual malice. He would reverse on the basis that there was no factual issue regarding whether defendants acted with malice.*

OPINION OF THE COURT

1. PROSECUTING ATTORNEYS — CIVIL LIABILITY — CIVIL RIGHTS —
   FEDERAL LAW — IMMUNITY.

   A prosecuting attorney has absolute immunity from civil liability under the federal civil rights statute in civil suits arising out of the initiation, prosecution, and presentment of a state's case against an accused (42 USC 1983).

2. PROSECUTING ATTORNEYS — CIVIL LIABILITY — CIVIL RIGHTS —
   FEDERAL LAW — DEFENSES — IMMUNITY.

   The focus in considering the applicability of the defense of absolute immunity on the part of a prosecuting attorney in a civil suit brought against him alleging violation of federal civil

rights is on the functional nature of the prosecutor's activities which are the basis of the lawsuit rather than on his status as a prosecutor; activity which is quasi-judicial in nature is entitled to absolute immunity, while activity which is essentially investigative or administrative in nature is entitled only to the protection of the lesser qualified good faith immunity (42 USC 1983).

3. PROSECUTING ATTORNEYS — QUASI-JUDICIAL FUNCTIONS.

Considerations helpful in examining the functional nature of prosecutorial conduct and identifying activities which are essentially quasi-judicial in nature are: (1) the physical and temporal relationship of the activity in question to the judicial process; (2) the degree to which the acts depend upon legal opinions and/or discretionary judgments; and (3) the extent to which the acts at issue are primarily concerned with the prosecutor's role as an advocate.

4. PROSECUTING ATTORNEYS — CIVIL LIABILITY — CIVIL RIGHTS — FEDERAL LAW — DEFENSES — IMMUNITY.

The best measure of whether a prosecutor's conduct in a proceeding was sufficiently adversarial to evoke strong resentment and frequent retaliatory litigation, thus justifying the application of absolute immunity from civil liability under federal civil rights legislation, may be the phase of the proceedings at which the disputed conduct occurred (42 USC 1983).

5. PROSECUTING ATTORNEYS — IMMUNITY.

No liability can attach to a prosecutor's acts which are reasonably within the general scope of his authority.

CONCURRENCE BY T. M. BURNS, J.

6. PROSECUTING ATTORNEYS — DISCRETIONARY FUNCTIONS — QUALIFIED PRIVILEGE — IMMUNITY.

*Prosecutors acting in discretionary matters in the course of their official duties enjoy only a qualified privilege and not an absolute immunity from liability for their actions.*

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P.C.* (by *Elizabeth J. Larin*), and *Michael J. Brady,* for plaintiff.

*John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals,

and *Don W. Atkins,* Assistant Prosecuting Attorney, for defendant.

Amicus Curiae:

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *E. David Brockman* and *Paul L. Bricker,* Assistants Attorney General.

Before: J. H. GILLIS, P.J., and T. M. BURNS and N. J. KAUFMAN,* JJ.

PER CURIAM. Defendants Wayne County Prosecuting Attorney, Chief Assistant Prosecuting Attorney, and John Doe, Assistant Prosecuting Attorneys (defendants) appeal by leave granted from a circuit court order denying defendants' motion for summary judgment. Pursuant to GCR 1963, 806.3(2), the following facts were adopted.

Plaintiff was arrested on November 5, 1980, by Highland Park Police officers. The officers came to the home of plaintiff's mother to question her about an automobile registered in her name. When plaintiff admitted to occasionally driving the car, the officers arrested him without a warrant.

Plaintiff was held by the Highland Park Police officers for more than 30 hours and was questioned by police officers from the City of Detroit.

At the end of this interrogation on November 5, plaintiff was turned over to Detroit police officers. He was questioned again for more than 56 hours while in custody of the Detroit Police Department. During that time, plaintiff made statements which tended to incriminate him in certain murders. He claims that these statements were solely a product of the "brutal interrogations". Plaintiff claims that

_____

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment.

his statements were not based on his personal knowledge but, rather, that he was merely providing details about the murders which were fed to him by the officers.

At the conclusion of the Detroit Police Department interrogation, plaintiff was charged with the murders of four prostitutes.

In December, 1980, one Donald Murphy was arrested and confessed to three of the four murders with which plaintiff was charged. In addition to Murphy's confession, there was physical evidence connecting him with the crimes. Some police officers urged the release of plaintiff since they now thought plaintiff was not the perpetrator of the murders.

The police officers having the power of decision, however, refused to release plaintiff, and the defendant prosecutor refused to drop the charges.

On or about January 8, 1981, defendant Carnovale, the chief assistant prosecuting attorney, made the following statement before newspaper, television and radio reporters:

"Based on a rather lengthy investigation, we have concluded that we are proceeding in the correct direction and we intend to continue proceeding in that direction. There will be no dismissals at this time of any charges against Payton."

This statement was published on or about January 9, 1981, in numerous newspapers and broadcast on numerous television and radio stations.

Subsequently, plaintiff's incriminating statements and admissions were suppressed by Judge Warfield Moore of Detroit Recorder's Court on the ground that plaintiff had been held too long without being charged and brought before a magistrate. Soon after the suppressions, all murder

charges against Payton were dismissed by Judge Moore. Plaintiff claims that the dismissal occurred on or about March 20, 1981. Defendants take issue with plaintiff regarding the time and date of the dismissal.

Plaintiff further claims that after the dismissal of the charges the following statement was made by defendant Cahalan, the prosecuting attorney, at a press conference:

"If there is any justice in the criminal justice system, I am confident that Mr. Payton will stand trial."

This statement was published in the Detroit Free Press and the Detroit News and broadcast by television and radio stations in the Detroit area on or about March 31, 1981. The Detroit Free Press republished this statement on or about January 18, 1982.

Plaintiff thereafter filed this lawsuit alleging, among other counts, that the statements made to the news media by Carnovale and Cahalan constituted slander per se because each maliciously and falsely accused plaintiff of serious crimes. Plaintiff argued that, contrary to 42 USC 1983, his federal civil rights were violated as were his rights under the state law of defamation.

Defendants moved for summary judgment pursuant to GCR 1963, 117.2(1), on the grounds that they were absolutely immune from the civil liability for their actions. In an opinion dated December 1, 1982, the trial court denied the motion with respect to plaintiff's claim of defamation under state law. Regarding plaintiff's claim under 42 USC 1983, the motion was denied without prejudice.

On appeal, defendants argue that the trial court

erred by denying defendants' motion for summary judgment, the trial court having held that defendants were not entitled to absolute immunity from civil liability. We agree with defendants that the trial court should have granted the motion.

In *Imbler v Pachtman*, 424 US 409; 96 S Ct 984; 47 L Ed 2d 128 (1976), the United States Supreme Court considered whether a prosecutor is immune from civil suit for damages under 42 USC 1983. In a limited holding, the Court concluded that a prosecutor is absolutely immune from civil suits arising out of the initiation, prosecution, and presentment of the state's case. *Imbler, supra,* p 431. The Court reasoned that such activities were "intimately associated with the judicial phase of the criminal process", and thus were activities which deserved the same degree of immunity as that provided under common law. *Imbler, supra,* p 430. The Court identified various considerations in support of its holding. The threat of suits, for example, would undermine the prosecutor's performance in that every decision would be clouded by considerations of his own potential liability for damages. Further, "unique and intolerable burdens" would be imposed if prosecutors were required to defend a decision requiring the exercise of discretion. *Imbler, supra,* pp 424-426. Thus, in considering the applicability of the defense of absolute immunity, the focus is on the *functional* nature of the prosecutor's activities which are the basis of the lawsuit rather than his status as a prosecutor. *Imbler, supra,* p 430.

In applying the rule established in *Imbler,* the federal courts have sought to distinguish between activity which is quasi-judicial in nature, and thus absolutely immune, and that which is essentially investigative or administrative, and thus entitled

to only the protection of the lesser qualified, good faith immunity. *McSurely v McClennan,* 697 F2d 309, 318 (DC App, 1982); *Taylor v Kavanagh,* 640 F2d 450, 452 (CA 2, 1981). As noted in *Gray v Bell,* 712 F2d 490, 499 (DC App, 1983), "[d]elineation of the precise scope of protected advocatory conduct beyond the boundaries established in *Imbler* has proved to be exceedingly difficult" and "requires more than the mechanical application of labels". *Taylor, supra,* p 452. The following considerations have been identified as helpful in examining the functional nature of prosecutorial conduct and identifying activities which are essentially quasi-judicial: "the physical and temporal relationship of the activity in question to the judicial process, the degree to which the acts depend upon legal opinions and/or discretionary judgments, and the extent to which the acts at issue are primarily concerned with the prosecutor's role as an advocate". (Footnotes omitted.) *Wilkinson v Ellis,* 484 F Supp 1072, 1081 (ED Pa, 1980). A consideration which is especially relevant to the facts of this case was identified in *Gray v Bell, supra,* as follows:

"In examining [the prosecutor's] conduct, we shall look first to whether it was sufficiently adversarial to evoke strong resentment and thus frequent retaliatory litigation. Perhaps the best measure of this is the *phase of the proceedings* at which the disputed conduct occurs. The prosecutor is far more likely to be the target of vindictive hostility once he has initiated criminal proceedings; in the post-indictment phase of the proceedings, he is generally required to do and say things on the public record that may cast suspicion and ultimately the criminal sanction on some individual. The prosecutor's role in these circumstances is plainly advocatory." *Bell, supra,* p 500 (Emphasis in original; foot-

note omitted.) See also *Strong v Slaton,* 510 F Supp 161 (ND Ga, 1981).

An application of the considerations set out above to the facts of this case leads us to conclude that the prosecutors are absolutely immune from liability under 42 USC 1983 for the statements in question. Both statements were made after the plaintiff had been charged and arraigned in connection with the murder of four prostitutes. As the defendant notes, Mr. Carnovale's statements were made over ten weeks before the plaintiff's incriminating statements were suppressed. Defendant Cahalan's statement was made subsequent to the suppression but at a time when the prosecution against Mr. Payton was continuing. Thus, both statements bore a close "physical and temporal relationship" to the judicial process. *Wilkinson, supra,* p 1081. Furthermore, both statements were intended to inform the public that the prosecution of Mr. Payton would continue. Thus, the statements were related to and depended upon the "legal opinions and/or discretionary judgments" of the prosecutor's office. *Wilkinson, supra,* p 1081. Further, the statements were primarily concerned with the prosecutor's role as an advocate, since they related to the public the decision of the prosecutor's office to continue pursuing, on behalf of the people of the State of Michigan, investigation of Mr. Payton.

The final, and most important, consideration is "the phase of the proceedings at which the disputed conduct occurs". *Bell v Gray, supra,* p 500. As stated in *Bell,* this factor is "perhaps the best measure" of whether the prosecutor's conduct was sufficiently adversarial to evoke strong resentment and frequent retaliatory litigation, thus justifying the application of absolute immunity to the prose-

cutor's conduct. *Bell, supra,* p 500. As mentioned earlier, both statements were made subsequent to the plaintiff's arraignment on the charges and at a time when the prosecution of Mr. Payton was proceeding at full speed. The statements were in fact designed to inform the public that the prosecution would continue despite developments which clearly weakened the prosecution's case. The defendants thus found themselves at the state of the proceedings where they are "generally required to do and say things on the public record that may cast suspicion and ultimately the criminal sanction on some individual". *Bell, supra,* p 500.

The trial court also erred in denying the motion for summary judgment under state law. A persuasive argument on this point came out of the Supreme Court of Indiana in *Foster v Pearcy,* 270 Ind 533; 387 NE2d 446 (1979), *cert den* 445 US 960; 100 S Ct 1646; 64 L Ed 2d 235 (1980), a case which involved facts similar to those at hand. In *Foster,* the prosecutor issued a statement to the press indicating that the plaintiff was part of a nationwide heroin ring, had grossed $18,000 per week from his heroin business, and had been indicted as a result of a two-month investigation. *Foster,* p 534. The court concluded that the prosecutor was absolutely immune from civil liability since he was duty-bound to keep the public informed of his investigative, administrative, and prosecutorial activities. Thus, where a prosecutor's acts are reasonably within the general scope of his authority, no liability can attach. *Foster,* p 538.

This conclusion was echoed in a recent Michigan Court of Appeals decision, *Davis v Eddie,* 130 Mich App 284; 343 NW2d 11 (1983). While *Davis* involved a claim of false arrest and imprisonment rather than defamation as a result of a press

release, this Court stated that "[w]here a prosecutor's actions are within the scope of his prosecutorial functions and duties, his acts are quasi-judicial in nature and he has absolute immunity regarding the performance of those functions and duties". *Davis,* p 286. In reaching this conclusion, the *Davis* Court relied upon the following observation from *Bloss v Williams,* 15 Mich App 228; 166 NW2d 520 (1968):

> " 'The public interest requires that persons occupying such important positions and so closely identified with the judicial departments of the government should speak and act freely and fearlessly in the discharge of their important official functions * * *.' Citing *Yaselli v Goff,* 12 F2d 396, 406 (CA 2, 1926)." *Davis, supra,* pp 286-287.

The *Davis* Court also noted that the duties and functions of a prosecutor are not strictly or narrowly construed, again citing the following passage from *Bloss:*

> " 'The prosecutor's powers and duties include not only those expressly set forth in the statute but also such additional functions as may be necessarily implied from those specifically mentioned.' *Bloss, supra,* p 233, citing 27 CJS District and Prosecuting Attorneys, § 10." *Davis, supra,* p 287.

Thus, Michigan law also favors the *Imbler* policy of protecting the prosecutor's independence of judgment from harassment due to the constant threat of potential litigation. Since the statements in question were clearly uttered while the defendants were performing prosecutorial functions and duties, their acts were quasi-judicial in nature and thus absolutely immune from liability.

Reversed.

T. M. BURNS, J. *(concurring)*. While I concur in the result reached by the majority, I would not hold that the prosecutor is cloaked with absolute immunity while making statements to the press. I agree with the trial court that defendants merely have a qualified privilege to make the statements in question, but disagree with the trial court's finding that there was an issue of fact based upon plaintiff's allegation of malice.

I would prefer to rely on the reasoning stated in *Walker v Cahalan,* 97 Mich App 346; 296 NW2d 18 (1980), *rev'd on other grounds* 411 Mich 857; 306 NW2d 99 (1981), *cert den* 454 US 1032; 102 S Ct 570; 70 L Ed 2d 476 (1981). Prosecutors acting in discretionary matters in the course of their official duties enjoy only a qualified privilege and not an absolute immunity. 97 Mich App 355-356. Clearly, both statements in question could be reasonably construed as statements on the merits of the case and, therefore, making the statements to the press cannot be deemed to be within the scope of a prosecutor's duty. I note that *Marrero v City of Hialeah,* 625 F2d 499 (CA 5, 1980), and *Helstoski v Goldstein,* 552 F2d 564 (CA 3, 1977), further support my position.

While I believe defendants are only protected by a qualified privilege, I feel that the trial court committed error requiring reversal since there was no factual issue as to whether defendants published the statements with actual malice.[1] Plaintiff merely alleges actual malice. There was not enough evidence offered to allow a jury to draw an inference that defendants committed the alleged defamation with actual malice. Plaintiff failed to set forth sufficient facts to raise a factual issue

---

[1] In finding that there is no material factual issue, I do not rely on Mr. Cahalan's affidavit. *Walker v Cahalan,* 411 Mich 857.

regarding malice.[2] I would therefore reverse the trial court's finding that there was a factual issue regarding whether defendants acted with malice.

---

[2] *VandenToorn v Bonner,* 129 Mich App 198, 210; 342 NW2d 297 (1983).