*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN TRENDELL,

       Plaintiff-Appellant,

v

MARK HACKEL, ERIC SMITH, DEAN ALAN,
TOWNER & TOWNER, PC, FRED POSAVETZ,
and CLINTON TOWNSHIP POLICE,

       Defendants-Appellees.

UNPUBLISHED
September 12, 2019

No. 345520
Macomb Circuit Court
LC Nos. 2018-002291-NM;
       2018-002292-NM

Before: JANSEN, P.J., and CAMERON and TUKEL, JJ.

PER CURIAM.

Plaintiff, proceeding *in propria persona*, appeals the trial court's opinion and order granting summary disposition under MCR 2.116(C)(7) and (C)(8) in favor of defendants Mark Hackel, Eric Smith, Dean Alan (the county defendants), Towner & Towner, PC (Towner & Towner), and Fred Posavetz.[1]  For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This appeal arises from plaintiff's allegations against the county defendants, Posavetz, and the police department challenging their decisions to not arrest plaintiff's brother, Paul Trendell, for an alleged assault and battery, and plaintiff's business associate, Joe Joseph, for the alleged embezzlement of business funds.  Plaintiff's allegations against Towner & Towner stem from his accusation that a staff member at Towner & Towner hung up the telephone when he attempted to contact the law firm regarding these matters.

---

[1] The Clinton Township Police Department is also a named party to this action, and, as addressed subsequently in this opinion, plaintiff's claims against the police department are also dismissed.

-1-

In Case No. 2018-002291-NM in the trial court (the first lawsuit), plaintiff filed a complaint against the county defendants, Towner & Towner, Posavetz, and the police department on June 19, 2018. Plaintiff alleged that in May 2018 he was sitting alone in his bedroom of his home in Clinton Township, Michigan, "smoking a little weed" when Trendell burst into his room, and, apparently angry about plaintiff smoking marijuana as well as unspecified issues about "food[,]" "smacked [plaintiff] as hard as he could." After the alleged assault plaintiff contacted the police department, and according to plaintiff only one officer arrived, which is contrary to established policy of the police department for domestic violence matters. Plaintiff alleged that the police officer who attended his home declined to pursue the matter because Trendell, when asked if he hit plaintiff, professed that he could not recall, and the officer also "turned on [plaintiff] about the marijuana." According to plaintiff, the decision not to pursue a police investigation was wrong because Trendell confessed the next day to a cousin, whose name is not discernible from the record, that he did in fact hit plaintiff. Plaintiff also questioned why Trendell was not immediately removed from the home after the assault allegation was made.

Posavetz, the police department, and Towner & Towner filed answers and affirmative defenses in the first lawsuit, but the county defendants, in lieu of filing answers and affirmative defenses, filed a motion for summary disposition under MCR 2.116(C)(7) and (C)(8). Posavetz, the police department, and Towner & Towner did not file a concurrence in support of the county defendants' motion. In support of the motion, the county defendants claimed that the complaint in the first lawsuit did not contain specific allegations demonstrating that they had engaged in any unlawful conduct, and that the complaint did not comply with MCR 2.111 because it did not contain detailed allegations informing them of the nature of the claims against them. The county defendants also contended that Hackel and Smith were immune from liability under MCL 691.1407(5) for actions taken while acting within their executive authority, and that Smith and Alan were immune from liability for any decisions made while acting in their capacity as prosecutors.

In Case No. 2018-002292-NM (the second lawsuit),[2] on June 19, 2018, plaintiff also filed a complaint against Smith and Alan alleging that, as a result of the police department's refusal to arrest Trendell for assault, Joseph, Trendell, and plaintiff's son had plaintiff committed to a mental institution against his will. Plaintiff alleged that while he was hospitalized, Joseph embezzled $15,000 from the business that both he and plaintiff have a 50% interest in, and plaintiff again faulted the Macomb County Prosecutor's office for refusing to take action against Joseph. In support of his complaint, plaintiff attached an account information sheet for a business checking account ending in 6528 held at Huntington National Bank. The information lists various withdrawals from the account for payments to Consumers Energy, Capital One, Foremost Insurance, and Sam's Club, as well as a withdrawal of $15,000 on May 11, 2018.

In lieu of filing an answer, Smith and Alan filed a motion for summary disposition under MCR 2.116(C)(7) and (C)(8). In their motion, Smith and Alan contended that Smith, as the

---

[2] The trial court consolidated the first lawsuit and the second lawsuit.

elected county prosecutor, "is absolutely immune as a matter of law[,]" and that both Smith and Alan, as prosecuting attorneys, were entitled to prosecutorial immunity. Smith and Alan argued that the complaint did not contain any "particularized factual assertions" that supported the conclusion that they were involved in any "unlawful conduct[,]" and that the complaint did not comply with MCR 2.111. Smith and Alan further argued that because of plaintiff's deficient pleadings, they were placed in a position in which they could not competently defend the case against them or even identify the pertinent legal issues. Moreover, Smith and Alan argued that Smith, as the elected county prosecutor for Macomb County, was "absolutely immune" from tort liability for actions taken within his executive authority under MCL 691.1407(5). Likewise, Smith and Alan asserted that they were both "afforded absolute quasi-judicial immunity" as prosecutors.

Plaintiff filed a response to the county defendants' motion for summary disposition in the second lawsuit, in which he alleged that he had provided Smith with several letters and emails and had never received a response. According to his response, plaintiff had also spoken to counsel for the county defendants and was told that he may have "a civil case" against Joseph for his actions in embezzling money from the business. Plaintiff also alleged that Smith and Alan should be fired for "utter incompetence[,]" and he was proceeding against them not for what they did do, "but for what they failed to do, prosecute[.]"

After holding a hearing on the county defendants' motions, the trial court granted summary disposition in favor of the county defendants, Posavetz, and Towner & Towner. Specifically, the trial court held that the county defendants and Posavetz were immune from liability, and that plaintiff had failed to state a valid legal claim against Towner & Towner. Plaintiff now appeals.

## II. IMMUNITY FROM SUIT

### A. STANDARDS OF REVIEW

In both lawsuits, the county defendants moved for summary disposition under MCR 2.116(C)(7) and (C)(8). This Court reviews a trial court's decision in response to a motion for summary disposition de novo. *Dye v Esurance Prop & Cas Ins Co*, ____ Mich ___, ___; ___ NW2d ___ (2019) (Docket No. 155784); slip op at 9. With respect to the county defendants and Posavetz, it is apparent from the trial court's written opinion and order that summary disposition was granted under MCR 2.116(C)(7) on the basis of governmental immunity, as well as on the basis of prosecutorial immunity with regard to Smith and Alan. In contrast, the trial court dismissed plaintiff's claim against Towner & Towner under MCR 2.116(C)(8) (failure to state a claim on which relief can be granted).

In *El-Khalil v Oakwood Healthcare, Inc*, ___ Mich ___, ___; ___ NW2d ___ (2019) (Docket No. 157846); slip op at 6, our Supreme Court articulated the standard of review for a trial court's decision on a motion for summary disposition brought under MCR 2.116(C)(8):

> A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint. When considering such a motion, a trial court must accept all factual allegations as true, deciding the

motion on the pleadings alone. A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery.

In contrast, when reviewing the trial court's determination on a motion for summary disposition brought under MCR 2.116(C)(7), appellate courts are guided by the following standard:

> MCR 2.116(C)(7) provides that a motion for summary disposition may be raised on the ground that a claim is barred because of immunity granted by law. When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate. [*Dextrom v Wexford Co*, 287 Mich App 406, 428-429; 789 NW2d 211 (2010) (citations omitted).]

## B. GOVERNMENTAL IMMUNITY

The thrust of plaintiff's argument on appeal is that that the county defendants, Posavetz, and the police department should be held liable for declining to arrest Trendell for the alleged assault on plaintiff and Joseph for embezzling funds from plaintiff. In response, the county defendants maintain that Hackel, as the elected County Executive of Macomb County, and Smith, as the elected Prosecutor of Macomb County, are immune from liability under MCL 691.1407(5), which provides, in pertinent part:

> A judge, a legislator, and the elective or highest appointive executive official of all levels of government are immune from tort liability for injuries to persons or damages to property if he or she is acting within the scope of his or her judicial, legislative, or executive authority.

Under this statutory subsection, the grant of governmental immunity is "absolute[,]" when the elective executive official acts within the scope of his executive authority. *Petipren v Jaskowski*, 494 Mich 190, 203; 833 NW2d 247 (2013); *Ross v Consumers Power Co* (*On Rehearing*), 420 Mich 567, 633; 363 NW2d 641 (1984).

> To qualify for absolute immunity from tort liability an individual governmental employee must prove his or her entitlement to immunity by establishing, consistently with the statute's plain language, (1) that he or she is a judge, legislator, or the elective or highest appointive executive official of a level of government and (2) that he or she acted within the scope of his or her judicial, legislative, or executive authority. [*Petipren*, 494 Mich at 204.]

In *Petipren*, our Supreme Court, quoting *American Transmissions, Inc v Attorney General*, 454 Mich 135, 141; 560 NW2d 50 (1997), observed that several factors will weigh into the consideration as to whether an executive official was acting within the scope of his or her authority.

> [T]he determination whether particular acts are within their [executive] authority depends on a number of factors, including the nature of the specific acts alleged, the position held by the official alleged to have performed the acts, the charter, ordinances, or other local law defining the official's authority, and the structure and allocation of powers in the particular level of government. [*Petipren*, 494 Mich at 206 (quotation marks omitted).]

The inquiry whether an executive official acted within the scope of his or her authority is an objective one, and will require a consideration of the facts at issue. *Id.* Additionally, the *Petipren* Court interpreted the Legislature's reference to "executive authority" in MCL 691.1407(5) as referring to "all authority vested in the highest executive official by virtue of his or her position in the executive branch." *Petipren*, 494 Mich at 208. Our Supreme Court ultimately held that a highest appointive executive official will enjoy absolute immunity under MCL 691.1407(5), even if the individual is performing "the acts of a lower-level employee" if such actions fall within the authority the official holds "by virtue of his or her role as an executive official." *Petipren*, 494 Mich at 212.

A review of the complaint in the first lawsuit does not support plaintiff's claim that Hackel is implicated in the alleged decision by the Macomb County Prosecutor's office to not prosecute Trendell. Instead, Hackel seems to have been added to this lawsuit to hold him, and Macomb County, liable as a general matter for the decision not to prosecute Trendell. See MCR 2.201(C)(5) (an action may be filed against a governmental unit in its own name or the name of an officer who is authorized to be sued on the governmental unit's behalf). The parties do not dispute that Hackel, as the Macomb County Executive, is indeed the highest elective executive official of Macomb County's executive branch of government as contemplated by MCL 691.1407(5) and *Petipren*, 494 Mich at 204. As previously noted, there is nothing in the complaint in the first lawsuit, or the record, to suggest that Hackel was somehow involved in the decision to not prosecute Trendell. More importantly, even assuming that Hackel was involved, there is nothing in the complaint or the record yielding any factual disputes with regard to whether Hackel was acting outside the scope of his executive authority as related to any matters involving plaintiff and Trendell. *Dextrom*, 287 Mich App at 431; *Petipren*, 494 Mich at 204. Accordingly, the trial court properly granted summary disposition as a matter of law in favor of Hackel under MCR 2.116(C)(7).

Likewise, Smith, as the elected Macomb County Prosecutor, also meets the definition of an "elective . . . executive official[.]" MCL 691.1407(5). See *Bauer v Co of Saginaw*, 111 F Supp 3d 767, 784 (ED Mich, 2015) (recognizing that the elected Saginaw County Prosecutor was immune from tort claim of intentional infliction of emotional distress as long as he was acting

within the scope of his authority).[3] Therefore, to the extent that plaintiff alleges that Smith in some way committed an unlawful act by not prosecuting Trendell or Joseph, the next inquiry is whether Smith acted outside the scope of his executive authority.

Article VI of the Macomb County Charter provides, in pertinent part:

> The department of prosecuting attorney is created. The head of the department is the elected prosecuting attorney.
>
> The powers and duties of the department are those provided by law for a prosecuting attorney. [Macomb County Charter, § § 6.2, 6.2.1.]

MCL 49.153 further provides, in pertinent part:

> The prosecuting attorneys shall, in their respective counties, appear for the state or county, and prosecute or defend in all the courts of the county, all prosecutions, suits, applications and motions whether civil or criminal, in which the state or county may be a party or interested.

Accordingly, under circumstances in which plaintiff is alleging that Smith ought to have taken action to ensure that Trendell and Joseph were prosecuted for the alleged assault and embezzlement, respectively, Smith is entitled to immunity under MCL 691.1407(5) because, in deciding what cases in which to undertake a criminal prosecution, Smith would have acted within the scope of his executive authority as delineated by the Macomb County Charter and state law. *Petipren*, 494 Mich at 204, 206-207.

Similarly, as the trial court correctly observed, Posavetz, as the Chief of Police for the police department, is the highest appointive executive official of the police department. *Petipren*, 494 Mich at 204 n 32 (observing that Michigan authority clearly holds that a police chief is the highest appointive elected official of a level of government). While the complaint filed in the first lawsuit is factually unclear with respect to the specific allegations leveled against Posavetz, plaintiff appears to challenge the following alleged actions by both Posavetz and the police department: (1) not having two police officers sent to his home when he contacted the police about Trendell's alleged assault, (2) not removing Trendell from plaintiff's home once the allegation of assault was made and, (3) declining to arrest Trendell. Section 236.01 of the Charter Township of Clinton Ordinances provides that a "full-time [p]olice [d]epartment" was established to "provide police protection[.]" Additionally, "[t]he Chief of Police, detectives and all officers of the [p]olice [d]epartment shall have the powers and duties as may be prescribed now or hereafter by law, to enforce all Township ordinances and State laws[.]" Charter Township of Clinton Ordinances, § 236.03. Similarly, pertinent sections of the Charter Township Act, MCL 42.1 *et seq.*, shed light on the authority of the township police chief, as well

---

[3] While considered persuasive, lower federal court decisions are not binding on this Court. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

as the police officers within the department. For example, MCL 42.12 provides, in pertinent part:

> The township board in each charter township may provide for and establish a police force and authorize the supervisor, or the township superintendent if one has been appointed, to appoint, subject to the approval of the said board, a township marshal and such other policemen and watchmen as may be required to protect property and preserve the public welfare and safety in that portion of the township not included within the corporate limits of any village or villages located wholly or in part within the township. . . . The township board shall make all necessary rules for the government of the township police force and its members and shall prescribe the powers and duties of policemen and watchmen, and may invest them with such authority as may be necessary for the preservation of quiet and order and the protection of persons and property within that part of the township not located within the corporate limits of any village.

MCL 42.21b also specifies the authority of police officers of a charter township to execute bench warrants for the arrest of individuals within the charter township:

> A police officer of a charter township or, if authorized by the township board, a constable of a charter township has the same authority within the charter township as a deputy sheriff to execute a bench warrant for arrest issued by a court of record or a municipal court.

Therefore, even accepting plaintiff's inartful factual allegations as true, *Dextrom*, 287 Mich App at 428-429, because plaintiff challenges the decision of Posavetz to not arrest Trendell for committing a criminal offense, the Charter Township of Clinton Ordinances, as well as state law, confirm that Posavetz was acting within the scope of his executive authority with regard to actions taken relevant to any investigation of and decision not to arrest Trendell, and the trial court correctly determined as a matter of law that Posavetz was absolutely immune from liability.

For reasons unclear from the record, the trial court did not address plaintiff's claim against the police department in its written opinion and order. Plaintiff named the police department as a defendant in the first lawsuit, and the police department filed answers and affirmative defenses but, like Posavetz and Towner & Towner, did not pursue a motion for summary disposition or a concurrence in the county defendants' motions. However, the police department would also be entitled to governmental immunity from plaintiff's claims. Specifically, MCL 691.1407(1) provides:

> Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function.

The police department is a governmental agency as defined by MCL 691.1401(a). *Mack v Detroit*, 467 Mich 186, 204; 649 NW2d 47 (2002).[4]  Moreover, the police department was undertaking a "governmental function" to the extent that it would be immune from tort liability if it was engaging in an activity "expressly or impliedly mandated or authorized by constitution, statute, local charter or ordinance, or other law." *Id*., quoting MCL 691.1401(b).[5]  As our Supreme Court has recognized, "[i]t is well established in Michigan that the management, operation, and control of a police department is a governmental function." *Mack*, 467 Mich at 204.  To the extent that plaintiff challenges the police department's decisions to (1) send a single police officer to his home when he first contacted the police department and, (2) not remove Trendell from the home, these allegations fall within "the management, operation, and control" of the police department to the extent that it is immune for undertaking these actions.  MCL 691.1407(1); *Mack*, 467 Mich at 204-205.  Additionally, whether to pursue the arrest of an individual, as part of the department's police protection obligation, is a duty reserved to the police department by the Charter Township of Clinton Ordinances, § § 236.01 and 236.03, and therefore also amounted to the exercise of a governmental function.  *Mack*, 467 Mich at 204.  Thus, the police department would also be entitled to governmental immunity under MCL 691.1407(1), and while the trial court did not dismiss plaintiff's complaint against it, we have the authority to do so.  MCR 7.216(A)(7) ("The Court of Appeals may, at any time, in addition to its general powers, in its discretion, and on the terms it deems just: enter any judgment or order or grant further or different relief as the case may require[.]").

## C.  PROSECUTORIAL IMMUNITY

As the county defendants point out in their brief on appeal, both Smith and Alan are also immune from plaintiff's claims in both lawsuits because of prosecutorial immunity.

As this Court recognized in *Bischoff v Calhoun Co Prosecutor*, 173 Mich App 802, 807; 434 NW2d 249 (1988), this immunity is extended to prosecutors "on the theory that they act in a quasi-judicial capacity."  The purpose of granting immunity to prosecutors is to allow them to discharge their important functions while being able to act and speak freely. *Id*. at 808.  The *Bischoff* Court, citing earlier precedent from this Court and the United States Supreme Court, acknowledged that there is a key distinction between activity by a prosecutor that is "quasi-judicial in nature," and entitled to absolute immunity, and that which is investigative or administrative and "entitled to only the protection of . . . qualified immunity." *Id*. at 809, citing *Payton v Wayne Co*, 137 Mich App 361, 367; 357 NW2d 700 (1984), and *Imbler v Pachtman*, 424 US 409; 96 S Ct 984; 47 L Ed 2d 128 (1976).  The individual who is seeking the cloak of

---

[4] While the *Mack* Court referred to MCL 691.1401(d) for the definition of "[g]overnmental agency[,]" the statute has since been amended, 2012 PA 50, and the pertinent statutory subsection is now MCL 691.1401(a).

[5] While the *Mack* Court referred to MCL 691.1401(f) for the definition of "[g]overnmental function[,]" the statute has since been amended, 2012 PA 50, and the pertinent statutory subsection is now MCL 691.1407(b).

absolute immunity from suit must show that immunity is warranted for the activity at issue. *Buckley v Fitzsimmons*, 509 US 259, 268-269; 113 S Ct 2606; 125 L Ed 2d 209 (1993).

In *Imbler*, in deciding whether the common-law immunity given to prosecutors would also apply in a lawsuit against a prosecutor brought under 42 USC 1983, the Court stated, in pertinent part:

> If a prosecutor had only a qualified immunity, the threat of [§ ] 1983 suits would undermine performance of his duties no less than would the threat of common-law suits for malicious prosecution. *A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages.* Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate. Further, if the prosecutor could be made to answer in court each time such a person charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law. [*Imbler*, 424 US at 424-425 (emphasis added).]

In discerning whether a prosecutor is absolutely immune from liability, the United States Supreme Court has instructed that "one must take account of the functional considerations" of the activities the prosecutor has undertaken. *Van de Kamp v Goldstein*, 555 US 335, 342; 129 S Ct 855; 172 L Ed 2d 706 (2009) (citation and quotation marks omitted). For example, if a prosecutor is not acting as an officer of the court, but is engaged in other functions, such as investigative or administrative matters unrelated to the prosecution of a case, he or she will only be entitled to qualified immunity. *Id*. Thus, the dispositive query is whether the challenged conduct by the prosecutor can be characterized as "intimately associated with the judicial phase of the criminal process." *Id*. at 343, quoting *Imbler*, 424 US at 430. The United States Supreme Court has held that a prosecutor is entitled to absolute immunity when he acts to initiate a judicial proceeding, but that absolute immunity will not be afforded when he or she gives advice to the police during the course of a criminal investigation. *Van de Kamp*, 555 US at 343. Specifically, in a case in which the prosecutor gave the police advice that they could interview a potential suspect under hypnosis during the course of a criminal investigation, the United States Supreme Court declined to extend the absolute privilege, observing that "[a]bsolute immunity is designed to free the judicial process from the harassment and intimidation associated with litigation." *Burns v Reed*, 500 US 478, 494; 111 S Ct 1934; 114 L Ed 2d 547 (1991).

Even if we accept as true plaintiff's allegations that Smith and Alan declined to prosecute Trendell and Joseph, in our view, the decision whether to pursue a criminal prosecution, which could be based on a myriad of reasons, including a lack of evidence or the perceived lack of success of the prosecution, is one that is closely associated with the judicial stage of criminal proceedings. Accordingly, in our opinion, in weighing the functions that Smith and Alan were allegedly performing that plaintiff claims were wrongful, the decision whether to initiate a criminal prosecution was a judicial function pivotal to their role as advocates. *Van de Kamp*, 555 US at 343; *Buckley*, 509 US at 269-270; *Imbler*, 424 US at 424-428, 431 n 33; *Bischoff*, 173

-9-

Mich App at 808. Additionally, the United States Supreme Court has observed that decisions concerning whether to file charges and to present a felony information to the court are the work of the prosecutor as advocate. *Kalina v Fletcher*, 522 US 118, 130; 118 S Ct 502; 139 L Ed 2d 471 (1997). Therefore, both Smith and Alan would be entitled to prosecutorial immunity in this case.

### D. FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED

In the trial court, plaintiff sought to proceed against Towner & Towner in the first lawsuit on the basis that he had apparently attempted to contact an unnamed attorney at Towner & Towner but the secretary hung up on his telephone call. Plaintiff does not further elaborate on the nature of his allegations, and his theory of liability against Towner & Towner remains unclear. While Towner & Towner did not file a motion for summary disposition in the trial court, or a concurrence with the motions filed by the county defendants, the trial court nonetheless dismissed the case against Towner & Towner. The trial court was permitted to take this action under MCR 2.116(I)(1), which provides that under circumstances in which the pleadings demonstrate that a party "is entitled to judgment as a matter of law, . . . the court shall render judgment without delay[.]" The trial court likely did so given the patent deficiency of plaintiff's allegations in the complaint in the first lawsuit and the nonsensical nature of his arguments during the hearing on the county defendants' motions for summary disposition. It is apparent from the trial court's tone and demeanor during the hearing as reflected by the transcript, as well as from its acknowledgment of the flexibility afforded to pro se complaints in its written opinion and order, that the trial court gave plaintiff a fair opportunity to pursue his claims.

In our view, the trial court's sua sponte dismissal of plaintiff's claims against Towner & Towner and Posavetz did not deprive plaintiff of his right to due process, as we are satisfied that the trial court, throughout the hearing on the county defendants' motions for summary disposition, gave plaintiff ample opportunity to explain the factual and legal underpinnings of all of his claims, and plaintiff simply was not able to do so in a coherent and understandable manner. Under such circumstances, the trial court provided plaintiff an opportunity to state the merits of his claims in their entirety. See *Al-Maliki v LaGrant*, 286 Mich App 483, 485; 781 NW2d 853 (2009) ("[t]he basic requirements of due process in a civil case include notice of the proceeding and a meaningful opportunity to be heard.").

### E. LIABILITY OF MACOMB COUNTY

In his brief on appeal, plaintiff asserts that Macomb County should bear responsibility for the emotional distress he has allegedly incurred, as well as his loss of income, apparently as the result of Joseph's embezzlement. As the county defendants point out in their brief on appeal, Macomb County was not made a party to the first or second lawsuit. See MCR 2.201(A) ("[t]he

party who commences a civil action is designated as plaintiff and the adverse party as defendant."). Plaintiff named Hackel, the County Executive of Macomb County, in the first lawsuit, and Smith, the Macomb County Prosecutor, in his second lawsuit. Smith was also named in the first lawsuit. MCR 2.201 provides, in pertinent part:

**(C) Capacity to Sue or Be Sued.**

\* \* \*

(5) Actions to which the state or a governmental unit (including but not limited to a public, municipal, quasi-municipal, or governmental corporation, an unincorporated board, a public body, or a political subdivision) is a party *may be brought by or against the state or governmental unit in its own name, or in the name of an officer authorized to sue or be sued on its behalf.* An officer of the state or governmental unit must be sued in the officer's official capacity to enforce the performance of an official duty. An officer who sues or is sued in his or her official capacity may be described as a party by official title and not by name, but the court may require the name to be added. [Emphasis added.]

Likewise, MCL 600.2051(4) provides, in pertinent part:

(4) Actions to which this state or any governmental unit, including but not limited to a public, municipal, quasi-municipal, or governmental corporation, unincorporated board, public body, or political subdivision is a party *may be brought by or against such party in its own name, or in the official capacity of an officer authorized to sue or be sued in its behalf, except that an officer of the state or any such unit shall be sued in his official capacity for the purpose of enforcing the performance by him of an official duty.* Whenever any officer sues or is sued in his official capacity, he may be described as a party by his official title and not by name, subject to the discretion of the court, upon its own motion or that of any party, to require his name to be added. [Emphasis added.]

See also *Grabow v Macomb Twp*, 270 Mich App 222, 230 n 4; 714 NW2d 674 (2006) (recognizing under MCR 2.201(C)(5) that an officer of a governmental unit is required to be sued in his official capacity to enforce the performance of an official duty).

Thus, by naming County Executive Hackel, plaintiff properly brought an action against the County under MCR 2.201(C)(5). While it is debatable whether Smith, as the County Prosecutor, can be sued on behalf of Macomb County in the second lawsuit, he would have authority to be sued on behalf of the Office of the Macomb County Prosecutor and the thrust of plaintiff's claims in the second lawsuit were against that office. However, as we have held, plaintiff's claims against the county defendants were properly dismissed by the trial court, and therefore, to the extent plaintiff asserts that Macomb County is liable for redress to plaintiff, any theory of liability potentially implicating Macomb County has been addressed as unsuccessful.

## III. SUPERINTENDING CONTROL

### A. STANDARD OF REVIEW

To the extent resolution of this issue requires this Court to interpret the pertinent court rules, this Court's review is de novo. *Huntington Nat'l Bank v Ristich*, 292 Mich App 376, 383; 808 NW2d 511 (2011).

### B. APPLICABLE LAW

In *Lapeer Co Clerk v Lapeer Circuit Judges*, 465 Mich 559, 567-568; 640 NW2d 567 (2002), our Supreme Court recognized that the state constitution, state statutes as well as the court rules place a "limitation on the superintending control authority of the Court of Appeals[,]" and that the Michigan Supreme Court holds a "far broader superintending control power" provided by the state constitution. Notably, the *Lapeer Co Clerk* Court reviewed Const 1963, art 6, § 10, which provides, in pertinent part: "The jurisdiction of the court of appeals shall be provided by law and the practice and procedure therein shall be prescribed by rules of the supreme court." As a preliminary matter, plaintiff's request that this Court exercise its superintending control ought to have been presented to this Court as an original action. For example, MCR 7.203(C)(1) provides, in pertinent part:

> **(C) Extraordinary Writs, Original Actions, and Enforcement Actions**. The court may entertain an action for:
>
> (1) superintending control over a lower court or a tribunal immediately below it arising out of an action or proceeding which, when concluded, would result in an order appealable to the Court of Appeals[.]

Additionally, the court rules and caselaw provide that when an appeal to this Court is available, "that method of review must be used[,]" and "[i]f superintending control is sought and an appeal is available, the complaint for superintending control must be dismissed." MCR 3.302(D)(2); *Shepherd Montessori Center Milan v Ann Arbor Charter Twp*, 259 Mich App 315, 347; 675 NW2d 271 (2003).

While there are procedural issues with how plaintiff has presented his request for the exercise of superintending control to this Court, this extraordinary remedy is nonetheless not available to plaintiff because "[s]uperintending control, like mandamus, lies to require [the trial court] to perform a function where [the trial court] has *a clear legal duty to act*." *People v Flint Mun Judge*, 383 Mich 429, 432; 175 NW2d 750 (1970) (emphasis added).

> The superintending court does not substitute its judgment or discretion for that of the [trial court]; neither does it act directly in the premises. Rather it examines the record made before the [trial court] to determine whether there was such an abuse of discretion as would amount to a failure to perform a clear legal duty; and in such case, the superintending court orders the [trial court] to perform his duty.

See also *Beer v City of Fraser Civil Serv Comm*, 127 Mich App 239, 242; 338 NW2d 197 (1983) (holding that the process to seek an order of superintending control is an original action "designed to require the defendant to perform a clear legal duty.").

Plaintiff has not articulated any clear legal duty on the part of the trial court, and our research has not revealed one, requiring the trial court to order Posavetz and the police department to arrest Trendell and Joseph, or the county defendants to prosecute Trendell and Joseph. Similarly, plaintiff's contention that this Court should intervene, exercising its power of superintending control over the trial court with respect to the prosecution of Trendell and Joseph is also unavailing, because it is the prosecutor, not the trial court, who determines whether a criminal prosecution should be initiated against an individual within Macomb County. Accordingly, plaintiff's request that this Court exercise its superintending control is unsuccessful because our exercise of this extraordinary remedy is limited to cases in which the trial court has failed to perform a clear legal duty.

Affirmed. Having fully prevailed on appeal, defendants are awarded costs under MCR 7.219.

/s/ Kathleen Jansen
/s/ Thomas C. Cameron
/s/ Jonathan Tukel