**Daniel Lee HAYES, Plaintiff,**

v.

**David Duane HALL, Charles Edgar Smith, Pamela McCabe, Susan Marshall and Okemos Enterprises Incorporated, Defendants.**

**No. G84–79 CA5.**

United States District Court,
W.D. Michigan, S.D.

March 15, 1985.

Franklin Richard Brussow, Brussow & Krause, Lansing, Mich., for plaintiff.

Norman H. Pylman II, Cholette, Perkins & Buchanan, Grand Rapids, Mich., for Smith and Okemos.

John Tallman, Grand Rapids, Mich., for David Hall.

Patrick A. Aseltyne, Cohl, Salstrom, Stoker & Aseltyne, Lansing, Mich., for McCabe & Marshall.

## OPINION RE MOTION TO DISMISS

HILLMAN, District Judge.

Defendants Susan Marshall and Pamela McCabe have filed a motion to dismiss for failure to state a claim, pursuant to Fed.R. Civ.P. 12(b)(6), and the matter is now before the court on that motion. They argue that plaintiff's suit against them is barred by absolute prosecutorial immunity. Plaintiff disputes their entitlement to such immunity.

In 1982, plaintiff Daniel Lee Hayes ("Hayes") was charged in the 55th District Court in Ingham County, Michigan, with assault and battery, a misdemeanor. The complaining witness was defendant Charles Edgar Smith ("Smith"), an employee of defendant Okemos Enterprises, Inc. The criminal proceeding followed from an altercation between Hayes and Smith in the Meridian Mall parking lot on January 31, 1982. The altercation was investigated by defendant David Duane Hall ("Hall"), a sargeant with the Meridian Township Police Department. Hall interviewed Hayes and Smith and Ginger Burns, an eyewitness, regarding the altercation. Defendants Susan Marshall and Pamela McCabe ("Marshall" and "McCabe") were both assistant prosecuting attorneys with the Ingham County Prosecutor's Office at the time, who briefly handled the resulting criminal proceeding at two stages prior to trial. The criminal trial resulted in a hung jury and charges against Hayes were dismissed by the district court on July 28, 1983. Plaintiff Hayes now sues defend-

ants Hall, Smith, Marshall, McCabe and the Okemos Enterprises, Inc., alleging their conduct with respect to that criminal proceeding violated his civil rights. He seeks monetary damages in excess of $300,000 pursuant to 42 U.S.C. §§ 1983 and 1985. He also appears to be asserting tort claims under state law for intentional infliction of emotional distress.

## I.

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the formal sufficiency of the complaint to state a redressable claim. However, the final sentence of Rule 12(b) provides that a 12(b)(6) motion to dismiss may be converted into a Rule 56 motion for summary judgment whenever matters outside the pleadings are presented to and accepted by the court. Wright & Miller, *Federal Practice & Procedure:* Civil §§ 1356 and 1366. On a motion for summary judgment under Rule 56, the movant bears the burden of showing conclusively that there is no genuine issue of material fact and that the movant is entitled to summary judgment as a matter of law. *Smith v. Hudson,* 600 F.2d 60 (6th Cir.1979); *Tee-Pak, Inc. v. St. Regis Paper Co.,* 491 F.2d 1193 (6th Cir. 1974); Fed.R.Civ.P. 56(a). The court is obligated to consider all "pleadings, depositions, answers to interrogatories, and admissions" on file, in addition to the material specifically offered in support of the motion. *Smith,* 600 F.2d at 64. In determining whether there are issues of fact requiring trial, "the inferences to be drawn from the underlying facts contained in the [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). A court may not resolve disputed questions of fact in a summary judgment decision and if a disputed question of fact remains, the motion should be denied, and the case should proceed to trial. *United States v. Articles of Device,* 527 F.2d 1008, 1011 (6th Cir.1976). In making its determination, the court must make reference to the entire record and all well-pleaded allegations are to be accepted as true. *Daco Corp. v. Goodyear Tire and Rubber Co.,* 523 F.2d 389 (6th Cir.1975).

In support of their motion to dismiss, defendants McCabe and Marshall submitted affidavits and exhibits. Having accepted that extra-pleading material, I have examined the full record in the case in deciding defendants' motion under Rule 56, including all depositions, affidavits, exhibits, answers to interrogatories and answers to requests to admit, as well as the briefs submitted by both sides. The conclusions flowing from that review follow.

## II.

Plaintiff's complaint contains the following allegations as to defendants McCabe and Marshall:

"¶ 13. Defendants Pamela McCabe and Susan Marshall, who were at all times pertinent hereto, employees of the Ingham County Prosecutor's Office, sought to continue to prosecute the Plaintiff without probable cause although they became aware that Defendant Hall withheld information from the Prosecutor's Office in an attempt to cause criminal process to be issued for the arrest and prosecution of the Plaintiff.

¶ 14. That Defendant McCabe in defiance of a Court Order from the bench of the 55th District Court refused to provide exculpating evidence which would have assisted Plaintiff in his defense and thereby deprived Plaintiff of the due process and equal protection rights assured to him by the Federal and State Constitutions.

\*     \*     \*     \*     \*     \*

¶ 29. That Defendant Susan Marshall did knowingly take steps to intimidate Plaintiff to cause him to pay money to Defendant Smith.

¶ 30. That Defendant Marshall did refuse to terminate the prosecution of Plaintiff, notwithstanding, her having talked to an eyewitness whose testimony

exculpated Plaintiff with regard to the criminal prosecution.

¶ 31. That Defendant Marshall conspired with others and members of the Ingham County Prosecutor's Office to continue to bring stress to bear upon Plaintiff and to cause Plaintiff to plead guilty to a lesser charge.

¶ 32. That Defendant Marshall used her position as a Prosecutor in an attempt to coerce and force Plaintiff to forego his rights to a civil suit against Defendant Smith.

¶ 33. That Defendant Marshall sought to withhold from Plaintiff rights assured to Plaintiff by the Federal Constitution and statutes, as well as the laws of the State of Michigan.

¶ 34. That Defendant Marshall engaged in extreme and outrageous acts.

¶ 35. That Defendant Marshall intended to cause, or by her reckless disregard for the consequences of her acts, sought to cause Plaintiff to suffer severe emotional distress.

¶ 36. That Defendant Marshall, in fact, caused such severe emotional distress."

The full record reveals that Marshall was an assistant prosecuting attorney for the Ingham County Prosecutor's Office during pendency of the criminal charges against Hayes. In that capacity, she represented the People at a pre-trial conference held on June 9, 1982. Thereafter, she contacted two witnesses, at the request of Attorney Brussow, counsel for Hayes—witnesses Brussow contended would exculpate Hayes. After discussing the underlying altercation with them, it was Marshall's opinion that their statements did not exculpate Hayes and she refused to terminate his prosecution. Marshall further participated in plea bargain negotiations with Hayes and his attorney in attempts to resolve the case short of trial. Plaintiff and his attorney characterize her efforts as a conspiracy to act as private counsel for Hall and Smith, in an effort to insulate them from civil liability. Plaintiff alleges that Marshall offered to dismiss the prosecution if Hayes would pay Smith $1,000 to cover Smith's medical bills arising from the assault. What Hayes characterizes as a conspiracy, Marshall characterizes as normal plea bargain negotiations in an effort to resolve a criminal proceeding short of trial.

The record reveals that McCabe, in her capacity as an assistant prosecuting attorney for Ingham County, represented the People at a September 22, 1982, hearing before Judge Thomas R. Roberts in the 55th District Court on Hayes' motions to quash, for a bill of particulars and to preserve testimony. The motion for bill of particulars requested at ¶ 10(D) "any recordation prior to the formulation of the formal police report that indicates [Smith] admitted responsibility for using language and physical force to escalate the tenor" of the underlying altercation between Hayes and Smith. In deciding the motion, Judge Roberts ruled that "[i]f there is any writing of any nature contained in the police report or otherwise" or "if there are any notes," a copy was to be produced. Following the hearing, and while in the process of preparing answers to the bill of particulars, McCabe contacted Sgt. Hall to discuss the police report and any notes he had. She met with Hall, asked him whether Smith had made the admission referenced in paragraph 10(D) of the motion, and when Hall said Smith had made no such statement to him, McCabe didn't investigate further nor ask for a copy of Hall's notes.

On September 24, 1982, one day prior to trial and two days following the hearing, McCabe filed the People's answers to the bill of particulars indicating "no records or notes known to the police or the Prosecuting Attorney indicating the complainant admitted responsibility for using language or physical force to escalate the tenor of the transaction." On September 24, 1982, she also received a proposed order regarding Judge Roberts' rulings on the motion, which Mr. Brussow had drafted and signed. She crossed out the language therein calling for production of "any notes from which the police reports were formulated,"

so that the amended order comported with her recall of the judge's bench ruling. She then signed the amended proposed order and gave it to Prosecuting Attorney Seidlin, who was to try the case for the People beginning the following day. She asked Seidlin to give the order to Mr. Brussow and to have Mr. Brussow raise with the judge prior to trial any objections he might have to the amended order. Mr. Brussow was given the proposed amended order, but never obtained Judge Roberts' signature on it.

The deposition testimony of Hayes reveals that Mr. Brussow, on the morning of the trial, showed Hayes the "proposed amended order" from McCabe, so both Hayes and Brussow knew before the trial began that the police notes had not been provided. Portions of the criminal trial transcript, which are attached to defendants' motion, show that McCabe's failure to produce the police notes was never brought to the court's attention before or during the trial, notwithstanding at least one clear opportunity to do so—when Brussow cross-examined Sgt. Hall, Hall testified that he had his notes with him. Brussow asked to see them to determine if they comported with the typed police report. The prosecuting attorney objected on grounds that Sgt. Hall had not used the notes to refresh his memory. Mr. Brussow, despite the judge's questioning regarding the notes, never told the judge that the notes were purportedly part of what the judge had ordered McCabe to produce. Mr. Brussow simply withdrew his request to see the notes. Brussow and Hayes now contend the notes constituted "exculpating evidence which would have assisted plaintiff in his defense."

The record in this case is repleat with facts which Hayes characterizes one way and defendants characterize another. However, those factual disputes are irrelevant. Even accepting all of plaintiff's allegations as true, and viewing all inferences in the light most favorable to plaintiff as the party opposing the motion, the conclusion is inescapable that plaintiff has failed to state a cognizable claim against McCabe and Marshall, as a matter of law.

## III.

### A. *Civil Rights Claims.*

The functional nature of the activities performed by McCabe and Marshall involved prosecutorial conduct for which they are absolutely immune under *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Hilliard v. Williams,* 540 F.2d 220 (6th Cir.1976); *Stefaniak v. State of Michigan,* 564 F.Supp. 1194 (W.D. Mich.1983); *Campbell v. Patterson,* 724 F.2d 41 (6th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1613, 80 L.Ed.2d 142 (1984).

The scope of prosecutorial immunity under *Imbler* is wide, enveloping all prosecutorial functions "intimately associated with the judicial [as opposed to the administrative or investigative] phase of the criminal process." *Imbler,* 424 U.S. at 430, 96 S.Ct. at 994. Even when the acts and omissions of the prosecutor deprive a criminal defendant of his constitutional right to a fair trial (as where a prosecutor knowingly suppressed *Brady* [*v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)] material which would exonerate defendant, *Hilliard,* 540 F.2d at 221, or knowingly uses perjured testimony, *Imbler, supra*), as long as the conduct involves the decision to initiate, the initiation and/or the prosecution of a criminal proceeding, the policy underlying the grant of absolute immunity is invoked. Because section 1983 liability for damages would "prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system," *Imbler,* 424 U.S. at 427–428, 96 S.Ct. at 993–994, conduct as egregious and reprehensible as that referenced above in *Hilliard* and *Imbler* enjoys immunity from section 1983 liability because that conduct comprises an integral part of the prosecutor's role in the judicial system.

The conduct alleged against McCabe and Marshall, no matter how it is charac-

terized, involved functions "intimately associated with the judicial phase of the criminal process." This is true even though McCabe and Marshall did not participate in the decision to issue the warrant or in the actual trial of the case. Once criminal charges have been filed, the handling of evidence, including witness statements, and police reports and notes, qualifies as part of the pursuit and presentation of the State's case and hence qualifies for *Imbler* immunity, as would contacts with police and witnesses pertaining to such evidence. *See Stefaniak,* 564 F.Supp. at 1197. Finally, it cannot seriously be argued that representation of the People at the pre-trial conference and motion hearing, and participating in plea bargain negotiations is *not* "intimately associated with the judicial phase of the criminal process." *See Campbell v. Patterson,* 724 F.2d 41 (6th Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 1613, 80 L.Ed.2d 142 (1984).

■ It is the intimate association between the prosecutorial conduct and the judicial phase of the criminal proceeding which is the supporting rationale for absolute immunity. Once that association and immunity are shown to exist, immunity is not ousted by characterizing the protected conduct as conspiratorial, unconstitutional, extreme, outrageous and/or reckless. *Id.,* at 43. Indeed, applying *Imbler,* a prosecuting attorney was held immune even though the court found he had withheld an FBI report indicating there was no blood on an accused's jacket, failed to prevent or to correct deceptive and misleading testimony, and instructed a witness to testify evasively, if not falsely. *Hilliard,* 540 F.2d at 221. Accordingly, defendants McCabe and Marshall are absolutely immune from section 1983 liability.

■ The reasons supporting absolute immunity in section 1983 cases apply with equal force to cases pursued under section 1985. Therefore, defendants McCabe and Marshall are also immune from section 1985 liability. *See Cribb v. Pelham,* 552 F.Supp. 1217, 1221 (D.So. Carolina 1982); *White v. Bloom,* 621 F.2d 276 (8th Cir.

1980), *cert. denied,* 449 U.S. 995 and 1089, 101 S.Ct. 533 and 882, 66 L.Ed.2d 292, 816; *Universal Amusement Co., Inc. v. Hofheinz,* 616 F.2d 202 (5th Cir.1980); *Halpern v. City of New Haven,* 489 F.Supp. 841 (D.C.Conn.1980); *Raitport v. Provident National Bank,* 451 F.Supp. 522 (E.D.Penn.1978).

### B.  State Tort Claims

The viability of any state tort claims against defendants McCabe and Marshall is controlled by state law. The prevailing Michigan view, up until very recently, favored "the *Imbler* policy of protecting the prosecutor's independence of judgment from harassment due to the constant threat of potential litigation," and accordingly held prosecutors absolutely immune from tort liability for conduct within the scope of their prosecutorial authority and duties. *Payton v. Wayne County,* 137 Mich.App. 361, 357 N.W.2d 700, 704–705 (1984); *Bloss v. Williams,* 15 Mich.App. 228, 166 N.W.2d 520 (1968).

Nine state cases involving governmental immunity issues were consolidated for expedited hearing before the Michigan Supreme Court in August, 1983, so the Court could reassess the issue of governmental immunity and the standards for applying same. On January 22, 1985, the Michigan Supreme Court released its long-awaited governmental immunity decision in *Ross v. Consumers Power Co.,* 420 Mich. 567, 363 N.W.2d 641. After examining the history of governmental immunity and the governmental immunity statute, the court rejected prior tests for determining what qualified as a "government function" under the statute and formulated a new test defining a governmental function as "an activity which is expressly authorized by the Constitution, statute or other laws."

The court then promulgated a test governing individual (as opposed to governmental agency) liability by establishing different categories of governmental employees and setting different liability standards for those categories. In support of adopting this test, the court noted the following policy justification for disparate treatment

of individuals based upon their official function:

"'* * * The policy which only provides a limited immunity to *lower level executive officials,* unlike the justifications for absolute immunity, reflects a recognition that official immunity should not shield malicious or intentionally unlawful behavior *when the actor is not engaged in broad, essential governmental decision-making.* Holding these public servants liable does not hamper or intimidate them in the faithful discharge or [sic] their duties since they are responding to established administrative guidelines, regulations and informal policy. It is assumed, therefore, that an unreasonable burden does not fall on an administrative system when courts hold lower level executive employees liable for their acts performed in bad faith."

(Emphasis added; citations omitted.) *Id.,* at 632, 363 N.W.2d 641. Using that policy justification, the Michigan Supreme Court proceeded to hold that:

"5) Judges, legislators, and the highest executive officials of all levels of government are absolutely immune from all tort liability whenever they are acting within their respective judicial, legislative, and executive authority. Lower level officials, employees, and agents are immune from tort liability only when they are:

a) acting during the course of their employment and are acting, or reasonably believe they are acting, within the scope of their authority;

b) acting in good faith; and

c) performing discretionary-decisional, as opposed to ministerial-operational acts.

'Discretionary-decisional' acts are those which involve significant decision-making that entails personal deliberation, decision and judgment. 'Ministerial-operational' acts involve the execution or implementation of a decision and entail only minor decision-making."

*Id.,* at 592, 363 N.W.2d 641. The court went on to explain that determining whether an act is "discretionary-decisional" or "ministerial-operation" requires an examination of the specific acts complained of, and no immunity would exist for *ultra vires* acts.

■ None of the nine cases consolidated in *Ross* involved immunity claims of prosecuting attorneys, and the *Ross* decision does not specifically address how such claims should fare under the new rules. We are, therefore, left to decide whether prosecuting attorneys are included in the rule according absolute immunity from tort liability to "judges, legislators and the highest executive officials of all levels of government" acting within their respective authority, or whether prosecuting attorneys are governed by the "lower level officers, employees and agents" portion of the ruling. Having reviewed Michigan's historical approach to prosecutional immunity and the complete opinion, I am satisfied that the Michigan Supreme Court would include prosecuting attorneys within the former, rather than the latter, category of governmental employees.

Historically, prosecuting attorneys have been recognized as "quasi-judicial" officers, whose duties are sufficiently judicial to cloak them with the same immunity afforded judges for the same reason: the public interest in having persons so closely identified with the judicial departments of government speak and act freely and fearlessly in discharging their official functions. The duties and functions of prosecuting attorneys are broadly construed to include express statutory functions and "such additional functions as may be necessarily implied from those specifically mentioned." *Bloss,* 15 Mich.App. at 233, 166 N.W.2d 520. Furthermore, conduct of the prosecution of a case on behalf of the People is deemed to be an executive act, and as the "chief law enforcement officer of the county," a prosecutor has the right to exercise broad discretion in instituting and pursuing prosecutions. *People ex rel. Leonard v. Papp,* 386 Mich. 672, 194 N.W.2d 693, 698 (1972). From any perspective, prosecuting attorneys are simply not "lower level" governmental employees. The policy justification quoted above distinguishes between high level officials (such

as prosecutors) who are statutorily charged with broad and essential governmental decision-making (such as deciding when to initiate and/or terminate criminal prosecutions, and how to present the People's case during the pre-trial and trial stages) and lower level officials *not* engaged in those essential activities. For all of these reasons, I interpret the *Ross* decision to accord absolute immunity from tort liability to prosecuting attorneys acting within the scope of their prosecutorial duties and authority.

Applying that rule to the case at hand, I am satisfied from the record in this case that all conduct alleged of defendants McCabe and Marshall occurred within the scope of their prosecutorial authority and duties. Accordingly, defendants McCabe and Marshall are entitled to summary judgment of dismissal as to any and all state tort claims asserted against them by plaintiff.

## CONCLUSION

Defendants McCabe and Marshall's motion to dismiss, converted to a Rule 56 motion for summary judgment of dismissal, is hereby granted. Plaintiff's complaint against them is hereby dismissed.