Shirley MARRICAL, Plaintiff-Appellee,

v.

The DETROIT NEWS, INC., et al., Defendants,

Robert Sage, Defendant-Appellant.

No. 85–1559.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 12, 1986.

Decided Nov. 11, 1986.

Don W. Atkins (argued), Detroit, Mich., for defendant-appellant.

Douglas Wartell (argued), Southfield, Mich., for plaintiff-appellee.

Before ENGEL, NELSON and RYAN, Circuit Judges.

PER CURIAM.

Defendant Robert Sage, Deputy Chief Prosecutor for Wayne County, appeals an order of the United States District Court for the Eastern District of Michigan denying his motion for summary judgment which was predicated upon claims that under Michigan law he is entitled to absolute and qualified immunity in this diversity action. We conclude that although his notice of appeal was timely filed, Michigan law does not afford Sage the substantive rights upon which an interlocutory appeal may be predicated.

The present libel action arises out of the prosecution of Shirley Marrical by Wayne County for the alleged kidnapping of her adult son Charles. Marrical's complaint alleges among other things that Robert Sage, the prosecutor in charge of the Marrical case, communicated a false and defamatory description of Mrs. Marrical as "a holy terror" to a reporter for *The Weekly World News, Inc.*, a Florida news service. Mrs. Marrical sought damages for libel, slander, defamation of character and intentional infliction of emotional distress. On January 30, 1984, the Florida defendant *Weekly World News, Inc.* petitioned for removal to the district court claiming that the allegations against it were separate and independent from those claims against the nondiverse parties under 28 U.S.C. § 1441(c). The district court granted the petition for removal and also removed the claims against the nondiverse parties, "in the interest of judicial economy."

On November 26, 1984, Sage and the other defendants filed a motion for summary judgment claiming absolute and qualified immunity under Michigan law. The district court denied this motion in part on January 16, 1985, and Sage appeals. In denying the motion, the court concluded that if Sage had described Marrical to *Weekly World News* as "a holy terror," that remark was not related to his role as advocate. "Sage's alleged comment appears to be so unrelated to the propriety of the kidnapping charges against Marrical that it is unreasonable to conclude that the statement was made in the interest of informing the public. Thus, the policy factors which form the basis of the absolute immunity doctrine ... are not applicable here." The court noted though that it had earlier determined that all defendants, including Sage, were entitled to qualified immunity under Michigan law.

While the other defendants filed motions for reconsideration on January 28, 1985, Sage did not seek leave to move for reconsideration until February 23, 1985. On June 11, 1985, the district court granted Sage leave to file his motion for reconsideration, but at the same time denied his mo-

tion, holding that Marrical was not libel-proof, and that Sage offered no other new basis for reconsideration. In so holding, the court concluded that a recent decision of the Michigan Supreme Court, *Ross v. Consumers Power Co.*, 420 Mich. 567, 363 N.W.2d 641 (1985), did not alter its prior conclusion that Sage was not entitled to absolute immunity. On July 8, 1985, Sage filed a notice of appeal from the district court's denial of his motion for reconsideration.

On appeal, Sage argues first that the denial of his motion for summary judgment predicated upon his claim of absolute immunity is immediately appealable. He next argues that under the Michigan case of *Payton v. Wayne County*, 137 Mich.App. 361, 357 N.W.2d 700 (1984), prosecuting attorneys are absolutely immune from claims of defamation for statements made to the media during the pendency of criminal proceedings. He further argues that under *Ross v. Consumers Power Co.*, 420 Mich. 567, 633, 363 N.W.2d 641 (1984), he is entitled to absolute immunity as a "highest executive official ... acting within [his] executive authority" or as a lower level official acting or reasonably believing that he acted within the scope of his authority, acting in good faith, and performing discretionary rather than ministerial acts. He finally contends that summary judgment should have been granted under his right to qualified immunity and that under the present circumstances Mrs. Marrical is libel-proof.

At oral argument, Marrical contended that Sage's interlocutory appeal should be dismissed as untimely. She also contends, among other things, that the district court's denial of Sage's claim of absolute

immunity is unappealable prior to final judgment.

## I.

Marrical contends that Sage's appeal is untimely since he filed his notice of appeal well beyond the 30 day period prescribed by Fed.R.App.P. 4(a). She argues that since his motion for reconsideration was also untimely, whether filed under Fed.R. Civ.P. 59(e) or 52(b), it failed to toll that time limit. *See Kennedy v. City of Cleveland*, 797 F.2d 297 (6th Cir.1986).

Fed.R.App.P. 4(a)(4), however, provides that a timely motion under Rules 52(b) or 59 by *any party* will toll the time for appeal as to all parties.[1] Although Rule 4(a)(4) is of no avail to separate defendants in consolidated actions, *Stacey v. Charles J. Rogers, Inc.*, 756 F.2d 440 (6th Cir.1985), the defendants in the present case were all joined in a single action. Accordingly, the timely motions for reconsideration filed by other defendants operated to toll the time for appeal for Sage. *Wirtz v. International Harvester Co.*, 331 F.2d 462 (5th Cir.1964); *Phinney v. Houston Oil Field Mat. Co.*, 252 F.2d 357 (5th Cir. 1958). Sage's notice of appeal was filed well within 30 days of the district court's decision denying the motions for reconsideration. Consequently, his appeal is timely.

## II.

Marrical next argues that the denial of Sage's immunity claims is not appealable before final judgment.

As a federal court sitting in diversity jurisdiction, we are obligated, under the doctrine of *Erie R.R. Co. v. Tompkins*,

---

1. Fed.R.App.P. 4(a)(4) provides:
 If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party: (i) for judgment under Rule 50(b); (ii) under Rule 52(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (iii) under Rule 59 to alter or amend the judgment; or (iv) under Rule 59 for a new trial, the time for

appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion. A notice of appeal filed before the disposition of any of the above motions shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above. No additional fees shall be required for such filing.

304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to apply state substantive law to discourage forum shopping and to avoid inequitable administration of the laws. *Hanna v. Plumer,* 380 U.S. 460, 466–68, 85 S.Ct. 1136, 1141–42, 14 L.Ed.2d 8 (1965); *see also Herron v. Keene Corp.,* 751 F.2d 873 (6th Cir.1985). Undoubtedly, the parties are bound by the federal procedural rules governing appeals, including the strictures of the collateral order doctrine under which Sage now seeks our review. *See Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We conclude that the right to an interlocutory appeal from the denial of a claim of absolute or qualified immunity under state law can only exist where the state has extended an underlying substantive right to the defendant official to be free from the burdens of litigation arising from acts taken in the course of his duties. Since we find no indication that Michigan's doctrine of absolute or qualified immunity includes a right to be free from the exigencies of trial, we conclude that Michigan law affords no basis for imposing on litigants the burdens of an interlocutory appeal. In so holding, we do not decide whether prosecutors are entitled to qualified or absolute immunity under Michigan law. *But cf. Hayes v. Hall,* 604 F.Supp. 1063 (W.D. Mich.1985).

"Implicit in entertaining any interlocutory order is the hazard that piecemeal appeals will burden the efficacious administration of justice and unnecessarily protract litigation, thus inconveniencing the parties with the costs and delay of separate appeals." *In re Nissan Motor Corp. Antitrust Litigation,* 552 F.2d 1088, 1094 (5th Cir.1977). This hazard is in no way diminished in litigation against government officers. We have recognized the "opportunity for abusive delay inherent in the protections afforded by the doctrines of absolute and qualified immunity" and acknowledged the impediment that the prospect of multiple interlocutory appeals presents to plaintiffs complaining of governmental abuses. *Kennedy v. City of Cleveland,* 797 F.2d at 301.

It is because of this hazard that congressional and judicial policy disfavors piecemeal appeals. The Supreme Court has emphasized that the judicial exception to this policy embodied in the collateral order doctrine applies to a "small class" of decisions and is a "narrow exception to the requirement that all appeals under section 1291 await final judgment on the merits." *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 374, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981). It has similarly cautioned that the statutory exception embodied in 28 U.S.C. § 1292(a)(1) to the congressional policy against piecemeal appeals is narrow. *Gardner v. Westinghouse Broadcasting Co.,* 437 U.S. 478, 480, 98 S.Ct. 2451, 2453, 57 L.Ed.2d 364 (1978).

In extending the right to interlocutory appeal under the collateral order doctrine to claimants of qualified immunity, the Supreme Court recently reaffirmed that,

> a decision of a district court is appealable if it falls within "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."

*Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). It emphasized that "[a] major characteristic of the denial or granting of a claim appealable under *Cohen's* 'collateral order' doctrine is that 'unless it can be reviewed before [the proceedings terminate], it can never be reviewed at all.'" *Id.* The Court there concluded that the qualified immunity defense under federal law, like the defense of absolute immunity, satisfies this standard since the "essence" of these defenses is "its possessor's entitlement not to have to answer for his conduct in a civil action." *Id.* The Court emphasized that this immunity extended not only to liability for money damages, but also to "the risks of trial" including the burdens of discovery. *Id.* at 2816. It is the defendants' entitlement not to stand trial that gives rise

to the interlocutory appeal, for it is that entitlement, rather than his right to be free from ultimate liability, which would be lost unless reviewed before the proceedings terminate. In light of the Supreme Court's unambiguous holding that the federal doctrines of immunity include the entitlement to be free from the risks of trial itself, the right to an interlocutory appeal from a denial of an immunity claim grounded in federal law cannot be questioned.

The precise contours of the immunity afforded state officers under Michigan law are, however, not so clearly defined.[2]

We initially note that the Michigan legislature, when it enacted its governmental immunity statute, declined to extend immunity to governmental officials and contemplated that they would be subject to suit for torts committed in the course of their duties. Rather than extend immunity, the legislature contented itself to authorize state agencies to pay for or furnish legal representation and to compromise, settle or pay any claim against a defendant official. Mich.Comp.Laws § 691.1408. Unlike governmental immunity, then, "the existence and scope of individual immunity continues to be a creature of judicial decision-making." *Ross*, 363 N.W.2d at 666.

We have no question that individual immunity for official actions developed in the case law extends to immunity from liability under Michigan law. The Michigan Supreme Court in *Ross* repeatedly referred to official immunity as immunity from *liability*.

> We therefore hold that judges, legislators, and the highest executive officials of all levels of government are absolutely immune from all tort *liability* whenever they are acting within their judicial, legislative, or executive authority. Lower level officials, employees, and agents are immune from tort *liability* only when they are

> 1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority;

> 2) acting in good faith; and

> 3) performing discretionary, as opposed to ministerial acts.

*Ross*, 363 N.W.2d at 667–68 (emphasis added). At the same time we find no reason to believe that the Michigan Supreme Court by this language intended to afford state officers immunity from suit as well as from liability. The court, in so holding, was well aware of the longstanding distinction drawn by Michigan courts between immunity from suit and immunity from liability in the doctrine of sovereign immunity, for it had specifically noted that distinction earlier in *Ross*. See *Ross*, 363 N.W.2d at 651–52; *see also Manion v. State*, 303 Mich. 1, 5 N.W.2d 527, 528 (1942). In making that distinction, the court has long concluded that immunity from suit may be waived while immunity from liability is retained. *Manion*, 5 N.W.2d at 528. It appears that in *Ross* the Michigan Supreme Court followed this distinction by granting immunity from liability while waiving immunity from process.

In its recent reexamination in *Ross* of the immunity that Michigan extends to government and governmental officials, the Michigan Supreme Court explained the purpose of individual immunity under Michigan law, but it did not provide any basis for a conclusion that it also meant to afford immunity from suit when it extended immunity from liability.

> Individual immunity exists to ensure that a decision maker is free to devise the best overall solution to a particular problem, undeterred by the fear that those few people who are injured by the decision will bring suit. We therefore will no longer define the parameters of individu-

---

**2.** At least until the decision in *Ross*, Michigan courts themselves had found the law in this area somewhat unsettled. "Unfortunately, two recent decisions of this Court have obfuscated the precise parameters of individual immunity." *Ross*, 363 N.W.2d at 665. "The appellate deci-

sions of our Michigan Courts in the area of governmental and governmental employee or official immunity are, more often than not, models of tergiversation." *Fisher v. Michigan Dept. of Mental Health*, 128 Mich.App. 72, 339 N.W.2d 692, 695 (1983).

al immunity with reference to whether the tortfeasor was engaged in the exercise or discharge of a governmental function. *Ross,* 363 N.W.2d at 666. The court nowhere included among its reasons for immunizing governmental officials the need to protect against the disruptions of pretrial proceedings such as discovery or the burdens of trial other than the risk of ultimate liability in damages. Moreover, we are offered no cases in which a Michigan court has granted summary judgment or dismissal before trial in order to protect against the burdens of litigation.[3]

Sage apparently expects Michigan to follow the course taken by the federal courts in this issue. Michigan courts, though, have quite plainly declined to follow the path chosen by federal courts in defining the scope and application of the immunity doctrines.[4] In *Ross,* the Michigan Supreme Court explained that by offering immunity, it sought to provide more complete protection to policy-making officers. This distinction is reflected in the standard enunciated by that court which affords absolute immunity to judges, legislators and highest ranking executive officials, and grants only qualified immunity to lower level officials when they perform discretionary acts in good faith and are acting or reasonably believe they are acting within the scope of their authority. *Ross,* 363 N.W.2d at 667–68. The federal standard for determining whether absolute or qualified immunity should apply does not turn so neatly on the branch or level of government at which the defendant is employed. Rather, it also includes concern for the systematic protections against abuses of power inherent in the defendant official's work. *See Butz v.*

*Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). The Michigan Court of Appeals has in the past noted such differences between federal and Michigan law of immunity and has declined to adopt federal standards. In *Tocco v. Piersante,* 69 Mich. App. 616, 245 N.W.2d 356 (1976), it reversed a trial court's grant of summary judgment in favor of a state prosecutor based on immunity where the trial court's reasoning was well developed in federal law but not "specifically adopted" by Michigan, saying, "The doctrine relied on below is well developed in the Federal law which provided the source of much of the trial court's thoughtful and well-documented opinion. It has not been specifically adopted in this state." *Tocco,* 245 N.W.2d at 361. We conclude that the development of individual immunity in the federal courts offers little guidance for the future course of Michigan's immunity doctrines.

Without a clear statement from Michigan courts extending the protections of individual immunity to encompass immunity from suit, we cannot disregard the narrow language that they have used to describe the scope of individual immunity, the explicit distinction they have drawn between immunity from suit and immunity from liability, and the practice under the state's statutory governmental immunity of affording immunity from liability only while waiving immunity from suit. We are reluctant to expand the small class of immediately appealable interlocutory orders without this clear statement of the compelling benefit to be achieved sufficient to justify imposing on litigants the burdens and delays of interlocutory appeals.

Appeal dismissed.

**3.** In *Lockaby v. Wayne County,* 406 Mich. 65, 276 N.W.2d 1 (1979), the Michigan Supreme Court, without explanation, deferred the decision as to whether immunity actually existed until after trial.

**4.** Two recent decisions of the Michigan Court of Appeals relied upon the reasoning of *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), to conclude that a prosecutor is entitled to absolute immunity under Michigan

law. While these cases, if determinative of Michigan law, would also support the conclusion that a denial of absolute immunity is immediately appealable, we find it significant that they were not followed or even cited by the Michigan Supreme Court when it sought to rationalize the state's individual or official immunity in *Ross. See Payton v. Wayne County,* 137 Mich.App. 361, 357 N.W.2d 700 (1984); *Davis v. Eddie,* 130 Mich.App. 284, 343 N.W.2d 11 (1983).

DAVID A. NELSON, Circuit Judge, dissenting.

The Michigan courts having recognized a distinction between immunity from suit and immunity from liability insofar as the sovereign immunity of the state is concerned, this case (which does not, of course, involve any issue of sovereign immunity) invites us to hazard a guess as to what the Michigan courts would say on the question whether individual judges and prosecutors are ever entitled, under Michigan law, to claim immunity from suit as opposed to mere immunity from liability. The views of my distinguished Michigan colleagues on such a question are far more authoritative than mine, but my guess is contrary to theirs.

In *Yaselli v. Goff,* 12 F.2d 396, 402 (2d Cir.1926), *aff'd,* 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395 (1927), where an Assistant United States Attorney was held to be immune from suit for malicious prosecution, the Court of Appeals quoted Judge Cooley, in "his great work on Torts" (3rd. Ed., Vol. 2, p. 795), to the effect that whenever the state confers judicial or prosecutorial powers upon individual judges or prosecutors, "it confers them with full immunity from private suits."

Judge Learned Hand, writing for the same court in *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir.1949), agreed. The justification for such immunity from suit, Judge Hand wrote, is that "it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties."

Judge Hand's words were quoted with approval by Judge Edwards in *Williams v. City of Detroit,* 364 Mich. 231, 261–62 n., 111 N.W.2d 1, 26 n. 4 (1961), and were repeated—again with evident approval—in *Ross v. Consumers Power Co.,* 420 Mich. 567, 363 N.W.2d 641, 655 (1984). In discussing the rationale of *Harlow v. Fitzgerald,* 457 U.S. 800, 819, 102 S.Ct. 2727, 2738,

73 L.Ed.2d 396 (1982) and *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 2815–16, 86 L.Ed.2d 411, 424–25 (1985), this court recognizes in today's opinion that "the federal doctrines of immunity include the entitlement to be free from the risks of trial itself...." The Michigan Supreme Court seems to capture precisely this thought in *Ross* when it states that "[i]ndividual immunity exists to ensure that a decision maker is free to devise the best overall solution to a particular problem, undeterred by the fear that those few people who are injured by the decision will bring suit." 363 N.W.2d at 666.

Not only does *Ross* explicitly recognize that individual immunity rests on the concept that officials should be free to conduct their business undeterred by the prospect that someone will "*bring* suit," much less be allowed ultimately to *prevail* in a suit, *Ross* also quotes Judge Cooley—not his work on Torts, but his decision in *Wall v. Trumbull,* 16 Mich. 228 (1867)—as endorsing the "rule of very great antiquity that no action will lie against a judicial officer for any act done by him in the exercise of his judicial functions.... [W]herever [jurisdiction] appears and is not exceeded, the protection is *complete.*" 16 Mich. at 234 and 236, as quoted at 363 N.W.2d 664 (emphasis supplied).

The "complete" protection historically accorded judges and prosecutors, as the great jurist's treatise makes clear, is immunity from suit—the kind of immunity that has long made a petition or complaint against a judge or prosecutor subject to immediate dismissal on demurrer where it charges such an official with tortious conduct in the exercise of his judicial or prosecutorial powers. That is the kind of immunity recognized in *Yaselli v. Goff,* 275 U.S. 503, 48 S.Ct. 155, 72 L.Ed. 395, *supra,* and *Gregoire v. Biddle,* 177 F.2d 579, *supra,* and I have difficulty in understanding why the courts of Michigan should now be thought likely to repudiate the reasoning of such cases and the clear teaching of Michigan's own Judge Cooley. With respect, I am bound to say that I would have sup-

posed that Michigan law entitles prosecutors [1] not to stand trial for their official acts, and I would have allowed the interlocutory appeal here. *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). *Cf. Kennedy v. City of Cleveland,* 797 F.2d 297 (6th Cir.1986).

**1.** Under Michigan law, absolute immunity covers all judges but only the "highest" executive officials at any given level of government. *Ross,* 363 N.W.2d at 667. Historically, the absolute immunity enjoyed by judges has been thought to extend to prosecutors as well, at least in the exercise of certain prosecutorial functions. Whether deputy chief prosecutors have absolute judicial immunity under Michigan law, or absolute immunity as "high" executive officials, and whether the statement for which Mr. Sage must stand trial was made in the exercise of a function protected by either judicial or "highest executive" immunity, are all questions I need not reach in view of the court's dismissal of the appeal.