

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-1-2006

# Grayer v. Edison

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1623

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Grayer v. Edison" (2006). *2006 Decisions*. Paper 639.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/639

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-1623

_____

LAURA GRAYER;
MARIE FLOYD

v.

TOWNSHIP OF EDISON; EDISON POLICE DEPARTMENT;
DETECTIVE EDWARD WHEELER; DETECTIVE SGT. MARK ANDERKO;
DETECTIVE RICHARD BUCK; OFFICER DAVID STERN;
DETECTIVE ANDY NAGY, JR.; OFFICER KOLE;
POLICE CHIEF EDWARD COSTELLO;
JOHN DOE, 1-10, said names being fictitious

Edward Wheeler,
Appellant

_____

No. 05-1624

_____

LAURA GRAYER;
MARIE FLOYD

v.

TOWNSHIP OF EDISON; EDISON POLICE DEPARTMENT;
DETECTIVE EDWARD WHEELER; DETECTIVE SGT. MARK ANDERKO;
DETECTIVE RICHARD BUCK; OFFICER DAVID STERN;
DETECTIVE ANDY NAGY, JR.; OFFICER KOLE;
POLICE CHIEF EDWARD COSTELLO;
JOHN DOE, 1-10, said names being fictitious

Mark Anderko,
Appellant

No. 05-1994

LAURA GRAYER;
MARIE FLOYD

v.

TOWNSHIP OF EDISON; EDISON POLICE DEPARTMENT;
DETECTIVE EDWARD WHEELER; DETECTIVE SGT. MARK
ANDERKO; DETECTIVE RICHARD BUCK; OFFICE DAVID STERN;
DETECTIVE ANDY NAGY, JR.; OFFICER KOLE;
POLICE CHIEF EDWARD COSTELLO;
JOHN DOE, 1-10, SAID NAMES BEING FICTITIOUS

Township of Edison,
                    Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
D.C. Civil 02-cv-02969
District Judge:  The Honorable Jose L. Linares

Submitted Under Third Circuit LAR 34.1(a)
June 27, 2006

Before: BARRY, VAN ANTWERPEN and SILER,[*] Circuit Judges

(Opinion Filed: August 1, 2006)

---

[*] The Honorable Eugene E. Siler, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

_____

OPINION

_____

BARRY, Circuit Judge

Appellees Laura Grayer and Marie Floyd brought suit in the United States District Court for the District of New Jersey pursuant to 42 U.S.C. § 1983 against a host of defendants, including appellants Detective Sgt. Mark Anderko and Detective Edward Wheeler of the Township of Edison police department. At the summary judgment stage, appellants asserted the defense of qualified immunity, which the District Court rejected. We will reverse the judgment of the District Court.

**I.**

We derive our jurisdiction from 28 U.S.C. § 1291. Although the claims against Anderko and Wheeler are before us on denials of summary judgment, which are not generally appealable, this appeal is properly before us because the issue in the District Court was appellants' entitlement to qualified immunity. Qualified immunity protects officials from suit, not just liability, and thus "is effectively lost" when a case proceeds to trial. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *see McKee v. Hart*, 436 F.3d 165, 168-69 (3d Cir. 2006). Therefore, "[w]hen a defendant moves for summary judgment based on qualified immunity, the denial of the motion may be appealed immediately under the collateral-order doctrine. . . ." *Forbes v. Twp. of Lower Merion*, 313 F.3d 144,

147 (3d Cir. 2002).[1]

"We exercise plenary review over the District Court's conclusions of law in its qualified immunity analysis," *McKee*, 436 F.3d at 169, and "we may 'review whether the set of facts identified by the district court is sufficient to establish a violation of a clearly established constitutional right,' but we may not 'consider whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove.'" *Forbes*, 313 F.3d at 147 (quoting *Ziccardi v. City of Philadelphia*, 288 F.3d 57, 61 (3d Cir. 2002)).

## II.

Because we write primarily for the parties, we will, quite literally, cut right to the chase. On June 22, 2000, Edison police officers, led by appellant Anderko, were looking

---

[1] The District Court also denied the Township's motion for summary judgment on the New Jersey Tort Claims Act claims brought against it, a denial the Township appeals. We will not consider the Township's appeal. We have recognized that "'the right to an interlocutory appeal from the denial of a claim of absolute or qualified immunity under state law can only exist where the state has extended an underlying substantive right to be free from the burdens of litigation arising from acts taken in the course of [official] duties.'" *Brown v. Grabowski*, 922 F.2d 1097, 1106-07 (3d Cir. 1990) (quoting *Marrical v. Detroit News, Inc.*, 805 F.2d 169, 172 (6th Cir. 1986)) (alteration in *Brown*). "New Jersey confers no such right." *Rivas v. City of Passaic*, 365 F.3d 181, 193 (3d Cir. 2004) ("[W]e lack jurisdiction to consider [the police officers'] arguments that the District Court erred in denying their defense of qualified immunity under New Jersey's Tort Claims Act."); *cf. Brown*, 922 F.2d at 1108 ("The Tort Claims Act's dominant consideration of immunity and policy of deterrence are equally consistent . . . with the view that the Act was intended to shield public officials and entities only from ultimate liability – and *not* initially from suit.") (emphasis in original). We will, therefore, dismiss the Township's appeal for lack of jurisdiction.

for and eventually spotted Thomas Raiford, for whom they had an arrest warrant for aggravated assault. Upon seeing the police, Raiford ran and the officers gave chase. Raiford entered the back of a nearby apartment and officers followed him in, but lost sight of him. Raiford had run out the front of the apartment and could not be located.

Anderko had reason to believe Raiford thereafter entered the nearby apartment of Raiford's aunt, appellee Laura Grayer. Anderko ordered three officers to the rear of the building and he, along with two other officers, including appellant Wheeler, stayed in the front. Shortly thereafter, Grayer returned home to find the police surrounding her building. Anderko approached her, explained the situation, and requested her consent to enter her apartment to arrest Raiford. Grayer contends that she gave Anderko, and only Anderko, consent to enter.

Grayer led Anderko, Wheeler, and one other police officer to her front door.[2] She unlocked the door and entered the apartment first, calling up the stairs for Raiford. Raiford responded, and Anderko instructed him to come down the stairs with his hands

_____

[2] The record indicates that just prior to the time the officers entered the front of the apartment with Grayer they were notified by the officers in the rear that Raiford could be seen inside. (*See* Anderko Dep. at 97-98, JA163a-64a; Wheeler Dep. at 116, JA307a ("Right about [the time Grayer was opening the door] I guess [Raiford] was talking to some of the officers out back so we knew for sure now at this point that he was in there."); Kole Dep. at 64, JA569a; Stern Dep. at 34-35, JA643a.) Indeed, Anderko was questioned during state court proceedings about Raiford's communications with officers in the rear of the apartment prior to Anderko's entry. (JA949a-50a ([Q]: "Is it fair for me to say that Raiford verbally gave himself to the detectives in the rear of the building?" [Anderko]: "Raiford made a verbal acclamation to the detectives to the rear. . . .").)

up. Raiford complied, and Anderko and the other officer proceeded to detain him at the foot of the stairs, near the front door.

At that point, Wheeler began walking toward the adjoining kitchen in the rear of the apartment, where the back door was located, to notify the officers in the rear that Raiford had been detained. Before he was able to do so, however, Grayer got between Wheeler and the door and told him not to open it.[3] Grayer testified that Wheeler pushed her aside in order to reach the door. Upon opening the door, additional officers entered the apartment, along with two bystanders.[4] Grayer testified that, at this point, Wheeler again pushed her away with his arm and twisted her arm behind her back to handcuff her. She was arrested, but, she testified, was not informed prior to the application of the cuffs that she was under arrest.[5]

While these events in the kitchen were taking place, Marie Floyd, who lived next door to Grayer and was her foster sister, came to Grayer's apartment to see what was happening. Police officers at the front of the house let her and another sister, Alma, enter the apartment. Floyd proceeded toward the rear of the apartment but, she testified, before

---

[3] Wheeler claimed that Grayer used force in her attempts to prevent him from opening the door.

[4] *See* Grayer Dep. at 32, JA410a ("He pushed me to the side and opened the door and let the other cops in.").

[5] Meanwhile, Raiford was yelling at the officers something to the effect of "Don't hurt my aunt." Moreover, additional individuals had been allowed through the back door and were present when Wheeler arrested Grayer.

she could make it into the kitchen, Wheeler punched her in the chest without provocation. Floyd fell backward and was caught by Alma.

Grayer and Floyd filed suit in the United States District Court on June 21, 2002 against the Township of Edison, the Edison Police Department, the chief of police, Wheeler, Anderko, and the other police officers present on June 22, 2000, raising a number of federal and state causes of action. For our purposes, it suffices to say that appellees' § 1983 causes of action against Anderko and Wheeler were based on appellees' claims, *inter alia*, that the entry into Grayer's home and the use of force against them violated the Constitution. The District Court denied appellants' assertions of qualified immunity, and this appeal followed.

### III.

"Government officials performing discretionary functions are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts must inquire "whether a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession." *Id.* Ultimately, if the officers here "'reasonably but mistakenly' conclude[d] that their conduct comport[ed] with the requirements of the Fourth Amendment," they "are entitled to immunity." *Id.* (quoting *Hunter v. Bryant*, 502

7

U.S. 224, 227 (1991) (per curiam)).  For the reasons we outline below, Anderko and Wheeler are entitled to immunity.

**A.**

The District Court denied Anderko's motion for summary judgment, determining that Anderko, "by executing a warrantless search and exceeding the bounds of Ms. Grayer's consent, knowingly violated settled law."  (Dist. Ct. Op. at 7, JA16a.)  Moreover, the District Court preserved the claims of supervisory liability against Anderko based on his alleged failure to communicate to Wheeler the limitations Grayer placed on consent.  (*Id.* at 14-15, JA23a-24a.)  We disagree with both decisions.

"It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'"  *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984) (quoting *United States v. United States District Court*, 407 U.S. 297, 313 (1972)).  Therefore, "[w]arrantless searches and seizures inside someone's home . . . are presumptively unreasonable unless the occupants consent or probable cause *and* exigent circumstances exist to justify the intrusion."  *United States v. Coles*, 437 F.3d 361, 365 (3d Cir. 2006) (emphasis in original).  One example of exigent circumstances is "hot pursuit of a suspected felon."  *Id.* at 366.

Here, in a separate opinion deciding the Township's motion for summary judgment, the District Court found "that a fleeing and potentially dangerous suspect sought refuge in Ms. Grayer's apartment."  (Dist. Ct. Letter Order and Op. at 2, A26a.)

8

The Supreme Court has made clear that "a suspect may not defeat an arrest which has been set in motion in a public place, and is therefore proper . . . , by the expedient of escaping to a private place." *United States v. Santana*, 427 U.S. 38, 43 (1976). We need not determine whether the entry of Grayer's home would fall squarely within the hot pursuit exception to the warrant requirement. Police officers had been chasing Raiford, for whom they had an arrest warrant, lost sight of him, had reason to believe he was in Grayer's apartment, and, apparently, saw him from the rear of the building at or around the time Anderko and Wheeler entered the building. We conclude, based on the facts identified by the District Court, that an objectively reasonable police officer could believe that the pursuit of Raiford into Grayer's home, even in the absence of the owner's consent, was constitutional. *Cf. Saucier v. Katz*, 533 U.S. 194, 206 (2001) ("[E]ven if a court were to hold that the officer violated the Fourth Amendment . . . *Anderson* still operates to grant officers immunity for reasonable mistakes as to the legality of their actions.").

Moreover, here, "Anderko sought Ms. Grayer's consent to enter her apartment and apprehend the suspect," and "some manner of consent was granted." (Dist. Ct. Letter Order and Op. at 2, JA26a.) "Under such a scenario, at least from the perspective of the officers on the ground, the Fourth Amendment issues are, at best, nuanced." (*Id.* at 3, J27a) In short, it is not at all clear that Anderko was mistaken in believing he could enter Grayer's house without a search warrant, and if he were, that mistake – in light of the

9

exigency and at least a measure of consent – was reasonable. *Cf. Hunter*, 502 U.S. at 228 ("[T]he court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed five years after the fact."); *Forbes*, 313 F.3d at 148 ("If an official could have reasonably believed that his or her actions were lawful, the official receives immunity even if in fact the actions were not lawful.").[6]

**B.**

Turning to Grayer's claim of excessive force against Wheeler, the District Court found that Grayer's testimony that Wheeler "intentionally pushed her out of his way and knocked her onto the kitchen table, all before indicating that he was arresting her," was "sufficient, assuming that it is truthful, to establish objectively unreasonable force." (Dist. Ct. Op. at 8, JA17a (emphasis removed).) Again, we disagree.

Wheeler was permissibly in the house to effectuate the arrest of Raiford. Once there, he was permitted to take reasonable measures to ensure the safety of officers and the suspect, including entering the adjoining kitchen and opening the back door. *Cf. Maryland v. Buie*, 494 U.S. 325, 327, 334 (1990) (permitting "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police

---

[6] Moreover, there is no indication that Anderko was personally involved or actually knew and acquiesced in Wheeler's alleged violative activities in the kitchen. *See Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1294 (3d Cir. 1997). He therefore is entitled to summary judgment on the supervisory liability claims against him as well.

10

officers or others" which includes searching "closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched").[7]

Grayer's own account of what happened in the kitchen makes clear that she attempted to intercept Wheeler and prevent him from opening the back door. By doing so, she interfered with his attempt to secure the house and complete the arrest of Raiford. He, therefore, was permitted to use a reasonable amount of force to get to the door if necessary. Similarly, the force used by Wheeler in the moment before and while cuffing Grayer does not move his conduct outside the protection of qualified immunity. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation and internal quotation marks omitted).

Here, by all accounts, Wheeler was "forced to make split-second judgments – in circumstances that [were] tense, uncertain, and rapidly evolving – about the amount of force that [was] necessary in [the] particular situation." *Id.* at 396-97. The circumstances as identified by the District Court permitted the officer to apply a measure of force to reach the back door and secure those who attempted to interfere. The force applied here, we note, inflicted no injury upon Grayer. While "[w]e do not agree that the absence of physical injury necessarily signifies that the force has not been excessive, . . . the fact that

_____

[7] Dist. Ct. Op. at 12, JA21a (". . . it is certainly reasonable for police officers to secure an unfamiliar area incident to an ongoing arrest . . . ").

11

the physical force applied was of such an extent as to lead to injury is indeed a relevant factor to be considered as part of the totality." *Sharrar*, 128 F.3d at 822. In this case, based on the assertions of Grayer and the facts identified by the District Court, Wheeler use of force was objectively reasonable under the circumstances.

## C.

So, too, was Wheeler's use of force against Floyd in the course of yet another split-second judgment it is not disputed he was required to make in an undisputedly brief but tumultuous situation. It bears mention, for what it is worth, that Floyd's claim of excessive force occupies but one paragraph (¶ 113) of the 128-paragraph and more than thirty-page Statement of Facts appellees have presented in their brief to this Court. (Appellees' Br. at 6-37.)

As noted above, Floyd contends that as she was approaching the kitchen, Wheeler, apparently out of the blue, punched her with a closed fist in the chest, sending her backwards.[8] According to Wheeler, as he was cuffing Grayer, a heavy-set black woman he did not know was "pulling on my arms to try to free Mrs. Grayer," JA 333a-34a, and, as the District Court explained Wheeler's version of the facts, "he merely used his outstretched arm to shove her out of the way." (Dist. Ct. Op. at 4, JA 13a.)

---

[8] While, of course, credibility is not for us to decide, it does strike us as somewhat implausible that Wheeler's first line of defense against a woman in her mid-sixties would be a closed fist punch to the chest.

Floyd would have us find that terminology matters, and that because she says it was a "punch" (and not a "push or shove"), "historical facts material to" the question of "whether the actions of [Wheeler] were objectively reasonable" are disputed. *See Sharrar*, 128 F.3d at 828. We decline to find that the terminology matters here.

Under the circumstances of this case, the mere use of the word "punch" is simply not enough to take this claim to a jury. Most importantly, Grayer, who clearly has her own complaints about Wheeler, saw the incident and confirms the essential parts of *Wheeler*'s account of what happened with Floyd. She agrees with him that, as she was being cuffed, Floyd was walking up, apparently from behind Wheeler. Wheeler pushed his arm out to the side and "shoved her back," she lost her balance, and Alma caught her. Grayer, who saw what happened, does not remember any punch, much less a punch with a closed fist. JA 414a. One use of a word belied by all the relevant evidence of that one brief contact is simply not enough to call into dispute the objectively reasonable action Wheeler took vis-a-vis Floyd during the potentially explosive situation in the kitchen.

## IV.

For the foregoing reasons, we will reverse the denial of Anderko's and Wheeler's motions for summary judgment. Furthermore, we will dismiss the appeal by the Township of Edison for lack of jurisdiction, and remand for further proceedings before the District Court.

13